Kenneth L. DUVAL et al., Plaintiffs,

v.

MIDWEST AUTO CITY, INC., a corporation, et al., Defendants.

No. CV75-L-138.

United States District Court, D. Nebraska.

Feb. 11, 1977.

Leroy P. Shuster, Lincoln, Neb., for plaintiffs.

Herbert J. Friedman, Lincoln, Neb., for defendants Midwest Auto City, Inc., Ervin Delp, and Tecumseh Motors.

David R. Gilman, Overland Park, Kan., for defendants Dave Studna and Dave Studna d/b/a E & J Motor Sales and E. Studna Auto Sales.

J. Michael Rierden, and W. Michael Morrow, Lincoln, Neb., for defendant Bernard Flaherty.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

Since 1972, the federal law has been designed to prohibit tampering with odometers on motor vehicles and to compensate persons victimized by the tampering. This lawsuit is one in which purchasers of two automobiles ask monetary damages for violation of that law.

Four violations are asserted: The defendants with intent to defraud disconnected, reset and altered the odometers on the vehicles the plaintiffs purchased; they with intent to defraud operated the vehicles on streets and highways knowing that the odometers were disconnected or nonfunctional; they conspired to violate the law with an intent to defraud; and they failed to furnish accurate odometer certifications.

The key statutory sections are:

15 U.S.C. § 1984:

> "It is unlawful for any person or his agent to disconnect, reset, or alter the odometer of any motor vehicle with the intent to change the number of miles indicated thereon."

15 U.S.C. § 1985:

> "It is unlawful for any person with the intent to defraud to operate a motor vehicle on any street or highway knowing that the odometer of such vehicle is disconnected or nonfunctional."

15 U.S.C. § 1986:

> "No person shall conspire with any other person to violate section 1983, 1984, 1985, 1987, or 1988 of this title."

15 U.S.C. § 1988:

> "(b) It shall be a violation of this section for any transferor to violate any rules [prescribed by the Secretary of Transpor-

tation requiring a transferor to give to a transferee disclosure of the cumulative mileage registered on the odometer and disclosure that the actual mileage is unknown, if the odometer reading is known to be different from the number of miles the vehicle has actually traveled] or to knowingly give a false statement to a transferee in making any disclosure required by such rules."

15 U.S.C. § 1989:

"(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court."

The facts as I find them from conflicting evidence after a five-day trial are set out in this memorandum of decision, acknowledging that the plaintiffs have the burden of establishing by a preponderance of the evidence that each defendant with intent to defraud violated one or more requirements of the above-quoted statutory sections and the amount of damages.

### THE DUVAL VEHICLE

On July 3, 1975, the plaintiffs Kenneth L. Duval and Cheryl J. Duval purchased a 1973 Plymouth Fury III automobile, bearing motor vehicle identification number PH23P3D217571, from the defendant Midwest Auto City, Inc. in Lincoln, Nebraska. The odometer reading was approximately 25,800 miles at the time of purchase.

Ervin Delp, the president of Midwest Auto City, Inc., had talked by telephone with David Studna, a wholesale automobile dealer who did business under the names of E & J Motor Sales and E. Studna Auto Sales in Overland Park, Kansas, about buying the 1973 Plymouth Fury III before either Midwest or Studna bought it. Studna knew and told Delp that the car, as well as

three others he proposed to buy, was a sheriff's patrol car and had high mileage on it. After the conversation, Studna, in the name of E. Studna Auto Sales, bought the car from Bud Brown Chevrolet-Plymouth, Inc., whose certificate of title showed the odometer mileage to be 83,572. Joe Studna, on behalf of E. Studna Auto Sales, reassigned the title to Bennie Motors, a used car dealership in Kansas City, Missouri, owned by Bennie Studna, the brother of David Studna. Bennie Motors then obtained a Missouri title which, in accord with Missouri law, did not reflect any odometer reading. Bennie Motors then transferred the car to Tecumseh Motors, which is one of the names under which Midwest Auto City, Inc. did business, the accompanying odometer certificate dated October 2, 1974, showing Bennie Motors as transferor and being signed "David Studna" on behalf of the transferor. The odometer certificate showed 25,628 miles.

Although the defendant Dave Studna, whose correct name is David Studna, has raised some question of the authority of Joe Studna, who is David Studna's son, to sign a certificate of title on behalf of E. Studna Auto Sales, the fact that the certificate of title from E. Studna Auto Sales to Bennie Motors shows that Joe Studna's signature was notarized by David Studna ends the argument.

Thus, sometime between the car's arrival at E. Studna Auto Sales and its receipt by Midwest, the odometer reading was altered. Midwest then advertised the car in the *Sunday Journal and Star* with the following words:

"This like new car has been driven only 25,544 miles and is priced to sell fast at only $2187."

The Duvals saw the advertisement and bought the car without being told by Midwest or anyone else that the odometer reading was incorrect. By the time the Duvals purchased the car they suspected and had reason to believe that the car had been a patrol car, although not because of anything told to them by any Midwest employ-

ee. Not only was nothing said to the Duvals to the effect that it had been a patrol car, but Midwest had removed from the frame a tag and had put on a vinyl top, each of which tended to disguise the car's use as a patrol car. The Duvals did not know that the car had more than 25,800 miles of actual use. A purchase price of $2,197.00, including a trade-in of a 1973 Hornet for $1,800.00, was paid by the Duvals.

Midwest had purchased the car for $1,750.00 and incurred expenses on it while it had it sufficient to bring its investment in it to $2,097.82. The wholesale value—the reasonable market value to a dealer—of an automobile of this car's make and model was $1,375.00 if the mileage were 83,572, and $2,100.00 if the the mileage were 25,800. The retail value—the fair market value to an individual buyer from a dealer—of such an automobile was $1,950.00 if the mileage were 83,572, and $2,675.00 if the mileage were 25,800.

### THE MASON VEHICLE

On July 25, 1975, the plaintiffs Jerry K. Mason and Linda L. Mason bought in Lincoln, Nebraska, a 1973 Ford Country Sedan station wagon, bearing motor vehicle identification number 3P74S138762, from the defendant Midwest Auto City, Inc. The odometer reading was approximately 29,570 miles.

Midwest, under the name of Tecumseh Ford-Mercury, which was one of the names under which it regularly did business, obtained the Ford station wagon from E & J Motor Sales by virtue of a reassignment of the certificate of title from Joe Studna on behalf of E & J Motor Sales on June 19, 1975. David Studna notarized the signature of Joe Studna. The reassignment showed no odometer reading.

E & J Motor Sales on June 12, 1975, had received a reassignment of the certificate of title from Pat Patterson Motor Co., Inc., Topeka, Kansas. The mileage on the reassignment, whether placed there at the time of the reassignment or later, was 29,486. Pat Patterson Motor Co., Inc. on June 7,

1975, received title from Robert E. and Lorene Powell and a certificate of title showing the mileage to be 68,901. That figure was obliterated on the copy of the certificate of title which thereafter went to Midwest and which was presented by Midwest to the County Clerk of Johnson County, Nebraska, for the obtaining of a certificate of title in the name of Tecumseh Ford-Mercury. Despite the obliteration, a certificate of title was issued. No satisfactory explanation has been made for why a certificate of title was issued. Evidently on the strength of an odometer certificate by Joe Studna and Colleen J. Miller, the odometer reading was shown on that certificate of title to be 29,486 miles.

It appears that, either immediately before the car came into the possession of E & J Motor Sales or while it was in E & J Motor Sales' possession, the odometer was altered.

Midwest paid E & J Motor Sales $2,150.00, and its expenses on the automobile brought the investment in the car to $2,426.44. The wholesale value of that make and model was $1,775.00 if the mileage were 68,901, and $2,300.00 if the mileage were approximately 29,500. The Masons paid $3,195.00, including a trade-in of a 1973 Ford LTD for $2,830.00. The fair market retail value of such an automobile was $2,375.00 if the mileage were 68,901, and $2,900.00 if the mileage were 29,500.

### CONSPIRACY

The two foregoing transactions, standing alone, do not establish a conspiracy. When amplified by substantial evidence of many other similar transactions, however, a conspiracy to violate the law with an intent to defraud is established by clear and convincing evidence.

Midwest, through the person of Ervin Delp, has done business for several years with David Studna, who has operated his wholesale business under various names, including E. Studna Auto Sales and E & J Motor Sales. During the two years immediately before the two sales to the Duvals and Masons, Midwest bought about 96 cars

that originated with David Studna. Many of them were high-mileage cars and a substantial number of them had had the odometers turned back. The frequency with which transactions occurred similar to those involving the Duvals and Masons makes a compelling case for the conclusion that Midwest and David Studna and Bennie Studna were knowingly conducting an operation of acquiring cars, altering the odometers, and selling them with an intent to defraud.

Two paths predominated. One would begin with the purchase of a car in Kansas, the certificate of title showing high mileage, whereupon the car would be sent to Bennie Motors in Missouri and titled there, where the state law does not require a mileage certification, and then the car would be transported to Nebraska for sale. The presence of the Missouri titles would tend to discourage the tracing of the mileage back to the Kansas title. The other path consisted of the purchase of an automobile in Kansas and sending the car to Nebraska for sale with a copy of the certificate of title sufficiently mutilated by erasure or ink smudge to render the high-mileage odometer reading illegible, thus obscuring to a potential purchaser the fact that the odometer itself had been turned back.

Midwest's policy was to decline to reveal to a purchaser the name of a previous owner, even when requested.

When a buyer would complain after a sale that the actual mileage must be higher than the odometer showed, Delp would tell him that all he, Delp, knew was that the car had been certified to Delp when he bought it as having the mileage as shown on the odometer.

Almost always, the automobiles were purchased by Midwest at a price commensurate with high mileage, rather than the low mileage shown on the odometers. This was true, for example with the purchase of a 1973 Chevrolet Monte Carlo in February, 1975, as shown in plaintiffs' Exhibit 3; a 1974 Plymouth Satellite Custom four-door sedan on June 11, 1975, plaintiffs' Exhibit 6; a 1972 Plymouth Satellite Custom eight-cylinder, four-door station wagon on March 27, 1975, plaintiffs' Exhibit 8; a 1973 Dodge Charger, eight cylinder, two-door hardtop on March 21, 1975, plaintiffs' Exhibit 13; a 1971 Dodge Coronet four-door sedan on March 1, 1975, plaintiffs' Exhibit 19; a 1973 Plymouth Fury III, eight cylinder, four-door hardtop on February 19, 1975, plaintiffs' Exhibit 27; a 1973 Plymouth Custom, eight cylinder station wagon on March 7, 1975, plaintiffs' Exhibit 28; a 1971 Ford LTD Broughm, eight cylinder, four-door hardtop on February 20, 1975, plaintiffs' Exhibit 51; a 1970 Ford Maverick, six cylinder, two-door sedan on March 1, 1975, plaintiffs' Exhibit 52; a 1973 Ford Galaxie 500, eight cylinder, four-door sedan on February 4, 1975, plaintiffs' Exhibit 57; a 1974 Plymouth Fury III, eight cylinder, four-door hardtop on June 20, 1975, plaintiffs' Exhibit 186; and a 1973 Plymouth Satellite four-door custom sedan on May 12, 1975, plaintiffs' Exhibit 187. The only exceptions in evidence appear to be those involving the Duvals and the Masons. In both of those sales Midwest paid an amount well above the high-mileage wholesale value, although still below the low-mileage wholesale value.

The sales by Midwest to purchasers at retail of these numerous high-mileage automobiles, as far as the evidence shows, were for prices sometimes reflecting a high mileage or moderately high mileage, such as in plaintiffs' Exhibits 3, 8, 52, 183 (Duval) and 187, and sometimes reflecting a low or moderately low mileage, such as in plaintiffs' Exhibits 13, 19, 27, 28, 34 (Masons) and 57. Sometimes the profit to Midwest was nominal, sometimes considerable, but in the absence of explanation, there can reasonably be only one conclusion as to the motivation for selling automobiles with odometer readings adjusted downward: To sell cars more quickly or at higher prices or to cause purchasers to think they were getting better deals than otherwise would be true, all on the falsely induced belief that they were getting low-mileage cars.

### APPLICATION OF FACTS TO STATUTE

■ Of the four bases for liability, the first is that the defendants disconnected,

reset and altered the odometers on the plaintiffs' vehicles. David Studna, either personally or through his employees, did so with respect to the Duval automobile with intent to defraud, because where there has been a reduction in the odometer reading while the vehicle is in the possession of a transferor, fraud is implied, in the absence of an explanation. *Delay v. Hearn Ford*, 373 F.Supp. 791 (U.S.D.C.S.C.1974); *Klein v. Pincus*, 397 F.Supp. 847 (U.S.D.C.E.D.N.Y.1975). The evidence is inconclusive with respect to the Mason automobile, because the disconnecting, resetting and altering may have occurred immediately before Studna obtained the Mason automobile. There is nothing to suggest that the other defendants disconnected, reset or altered the odometer of either of the automobiles of the plaintiffs. Liability attached to David Studna on this ground to the Duvals, but not to the Masons.

The second ground for recovery is that the defendants operated the plaintiffs' vehicles on streets and highways, knowing that the odometers were disconnected or nonfunctional. There is no evidence to support this allegation.

■ The third basis for recovery is conspiracy. The evidence supports that allegation against David Studna, who does business as E & J Motor Sales and has done business as E. Studna Auto Sales, and against the defendant Midwest Auto City, Inc., which does business in its own name and in the names of Tecumseh Motors and Tecumseh Ford-Mercury. The evidence also supports the allegation against Ervin Delp, the president of Midwest. There is not enough strength in the evidence to carry a finding that Bernard Flaherty was a member of the conspiracy.

Key features of the conspiracy were the altering of odometers, the giving of false odometer certifications by both Studna and Midwest, the smudging of copies of Kansas certificates of title, the registering of vehicles in Missouri in the name of Bennie Motors, and the selling of cars without revealing the fact of the higher mileage.

Paragraph 22 C of the second amended complaint describes the conspiracy as "a plan whereby high mileage . . . motor vehicles were purchased in Missouri . . . ." but that unnecessarily limited description does not mean that the Mason transaction, which did not originate, as far as the defendants were concerned, with a purchase in Missouri, was not in the conspiracy. The conspiracy, accurately described as far as the description goes, was broader in scope than the description implies. But it remained the same conspiracy. The sales to the Duvals and the Masons were within the conspiracy and liability to all plaintiffs ensues.

■ The fourth ground alleged is that the defendants failed to furnish the plaintiffs with odometer mileage statements, stating that the actual mileage on the vehicles was unknown. This allegation is supported by the evidence as to the defendants David Studna, Midwest Auto City, Inc., and Ervin Delp. Section 1988 of the Act authorizes the Secretary of Transportation to prescribe rules in certain respects. The rules which he has prescribed, insofar as they are significant in this action, are shown in 49 C.F.R. § 580.4, as follows:

"(a) Before executing any transfer of ownership document, each transferor of a motor vehicle shall furnish to the transferee a written statement signed by the transferor, containing the following information:

(1) The odometer reading at the time of transfer . . .

\* \* \* \* \* \*

"(c) In addition to the information provided under paragraph (a) of this section, if the transferor knows that the odometer reading differs from the number of miles the vehicle has actually traveled, and that the difference is greater than that caused by odometer calibration error, he shall include a statement that the actual mileage is unknown."

This rule was knowingly violated by David Studna, Delp and Midwest as to both automobiles purchased by the plaintiffs. Studna gave false odometer certificates,

which enabled Midwest to obtain certificates of title containing the false mileage figures. That the statute contemplates liability on Studna, as well as Midwest and Delp, in such circumstances arises from the fact that a transferee who obtains a false odometer certificate from another can use it, as Midwest usually did when someone complained that actual mileage must be larger than that shown on the odometer, as a basis for telling the customer that he only knows that his transferor certified the low mileage to him. That would tend to discourage the purchaser from backtracking to find someone who could be liable. To eliminate that buffer, liability is placed on each transferor who makes no certification or a false certification knowingly.

▉ The legislative history of the applicable portion of the statute, as related in 3 *U.S.Code Congressional and Administrative News* p. 3971 (92nd Congress, Second Session, 1972), is this:

"Section 408 makes it a violation of the title for any person 'knowingly' to give a false statement to a transferee. This section originally allowed a person to rely completely on the representations of the previous owner. This original provision created a potential loophole, however. For example, a person could have purchased a vehicle knowing that the mileage was false but received a statement from the transferor verifying the odometer reading. Suppose an auto dealer bought a car with a 20,000 mile odometer verification but any mechanic employed by that auto dealer could ascertain that the vehicle had at least 60,000 miles on it. The bill as introduced would have permitted the dealer to resell the vehicle with a 20,000 mile verification. In order to eliminate this potential loophole the test of 'knowingly' was incorporated so that the auto dealer with expertise now would have an affirmative duty to mark 'true mileage unknown' if, in the exercise of reasonable care, he would have reason to know that the mileage was more than that which the odometer had recorded or which the previous owner had certified."

Claiming ignorance, even truthfully, is not enough to avoid liability for giving a certification showing an odometer figure, rather than "unknown." Care must be taken to learn and reveal the facts, rather than care to avoid or hide them. A precise statement of the degree of care that must be used is unnecessary for resolution of the present case, because David Studna, Joe Studna and Colleen Miller, the secretary and bookkeeper for Midwest, as to both cars, either knew directly of the falseness of the odometer readings on these particular cars or were reckless in their disregard of obvious red flags, such as the undecipherable odometer reading on the Kansas certificate of title to the Mason car. A "knowing" violation is therefore chargeable to them. The evidence does not show that Delp personally knew of the falseness of the Mason car's odometer reading, but he knew of and approved the practice, employed often by Colleen J. Miller, of getting certificates of title in Johnson County, Nebraska, with the use of illegible Kansas certificates of title. He was the president and chief executive officer of Midwest. He, too, must be considered to have known that the mileage on the Mason vehicle was not as registered on the odometer.

▉ The second amended complaint lists the defendants as "Midwest Auto City, Inc., A Corporation; . . . Dave Studna, Individually, Dave Studna d/b/a E & J Motor Sales and E. Studna Auto Sales; Ervin Delp, Individually; Midwest Auto City, Inc., and Ervin Delp d/b/a Tecumseh Motors; and Bernard Flaherty." Under the evidence there are four entities only—Midwest Auto City, Inc., David Studna, Ervin Delp, and Bernard Flaherty. The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations. So also with a corporation which uses more than one name.

## DAMAGES

■ The statute declares that the liability is for "three times the amount of actual damages sustained or $1,500, whichever is greater." Although "actual damages" is not defined in the statute, it seems reasonable to give it the meaning commonly applied to fraud cases. This is the difference between the amount paid by the plaintiffs—not the value of the car if it had been as represented—and the fair market retail value of a vehicle of the type purchased with the number of miles actually traveled by the car, plus such outlays as are legitimately attributable to the acts of the defendants. See *Smith v. Bolles*, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279 (1889); *Towle v. Maxwell Motor Sales Corp.*, 26 F.2d 209 (C.A. 8th Cir. 1928).

Here, no expenses were shown to have been attributable to the acts of the defendants. To be sure, substantial repairs were reasonably done on the cars, but what amount represented repairs that would not have been necessary had the cars been the lower-mileage vehicles the odometers indicated they were, was not established or even attempted.

The actual damages, then, of the Duvals are the difference between $2,197.00 and $1,950.00, or $247.00. Tripled, this amount is less than $1,500.00, so the statutory minimum of $1,500.00 is applicable. As to the Masons, the damages are the difference between $3,195.00 and $2,375.00, or $820.00. Tripled, the amount is $2,460.00, to which the Masons are entitled under the statute.

■ Liability of David Studna, Midwest Auto City, Inc. and Ervin Delp is joint and several; each is liable for the whole judgment of each plaintiff. *Restatement of the Law, Torts*, § 875, p. 434.

On October 25, 1976, a settlement was reached which recited that "Bennie Studna, Individually" and "Bennie Studna d/b/a Bennie Motors" had paid to the Duvals $2,500.00 and to the Duvals' counsel $500.00, in return for which the Duvals and the Masons released "Bennie Studna and Bennie Studna d/b/a Bennie Motors" from lia-

bility, while reserving all claims against all other defendants. An order of dismissal has been entered as to the releasees.

■ The reservation in the release of the claims against the other defendants prevented the release of the present defendants. *Restatement of the Law, Torts*, § 885(1), p. 460.

■ The general rule is that:
"Payments made by one tortfeasor on account of a harm for which he and another are each liable, diminish the amount of the claim against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person."

*Restatement of the Law, Torts*, § 885(3), p. 460.

The policy of the odometer statute is both to "prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers . . ." 15 U.S.C. § 1981. The goal of deterring those tempted to turn back odometers, which is encompassed within the purpose of prohibiting tampering, is effected in several ways: Having a minimum civil liability of $1,500.00 payable to a victim; tripling the actual damages if that results in more than $1,500.00; allowing of civil penalties payable to the United States of up to $1,000.00 for each violation of the Act on suit by the Attorney General (15 U.S.C. § 1990b); providing for criminal penalties (15 U.S.C. § 1990c); authorizing inspections, investigations and administrative proceedings by the Secretary of Transportation for the enforcement of the statute (15 U.S.C. §§ 1990d and 1990e); and injunctive relief (15 U.S.C. § 1990).

The array of techniques for controlling violators or potential violators militates against a holding that each violator should be required to pay the full judgment and not receive a diminution of his liability by reason of payment by another. If the stat-

ute depended entirely or primarily upon the civil liability provision to deter incipient violators, or if the civil liability provision were not itself punitive, the argument for requiring each violator to pay without benefit of credit for payment by another would be stronger.

All in all, I am unable to find that legislative history or policy would justify a judicially declared exception to the rule quoted from the Restatement that payment by one tortfeasor diminishes the amount of the claim against another tortfeasor on account of the harm for which each is liable.

The Duvals have already received $2,500.00, which exceeds the amount of recovery in this case, and they are therefore entitled to no more, except for court costs and attorney fees.

The Masons are entitled to a judgment of $2,460.00 plus court costs and attorney fees.

Because evidence has not been taken on the amount of attorney fees to be awarded, entry of a judgment will be withheld until evidence is received. Counsel shall have fifteen days from the date of this memorandum of decision to submit affidavits. If a hearing for presentation of testimony is desired, request for it should be made within the same fifteen days.