**WOOD MANUFACTURING COMPANY, INC., Plaintiff,**

v.

**Richard SCHULTZ; Donald Doty; U.S. Bass Fishing Association, Formerly Western Bass Fishing Association; and Skeeter Products, Inc., Defendants.**

Civ. No. 85–3005.

United States District Court,
W.D. Arkansas,
Harrison Division.

July 11, 1985.

Gary B. Rogers, House, Wallace, Nelson & Jewell, Little Rock, Ark., for plaintiff.

Don A. Smith, Harper, Young, Smith & Maurras, Fort Smith, Ark., for Richard Schultz, Donald Doty and U.S. Bass Fishing Ass'n.

Diane S. Mackey, Friday, Eldredge & Clark, Little Rock, Ark., for Skeeter Products, Inc.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Wood Manufacturing Company, Inc., brought this action against the defendants for breach of contract and tortious interference with contract, seeking specific performance, compensatory and punitive damages, and preliminary and permanent injunctive relief. The court referred plaintiff's request for a preliminary injunction to the United States Magistrate for a hearing pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was held, and on March 28, 1985, the magistrate issued his proposed findings and recommendations in which he recommended that plaintiff's request for preliminary relief be denied.

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to the action filed a timely objection to the magistrate's proposals; under the same statutory authority we undertake to make a *de novo* determination of those findings and recommendations objected to by the parties. In addition, we will also dispose of motions to dismiss filed by each defendant taking the position that the court does not have jurisdiction over the defendants.

### I.

A. Wood Manufacturing Company, Inc., an Arkansas corporation, manufactures fiberglass fishing boats and boat trailers. Its products are marketed nationally as Ranger bass boats. U.S. Bass Fishing Association (U.S. Bass), formerly Western Bass Fishing Association,[1] has its principal place of business in California and organizes bass fishing tournaments throughout the country. Skeeter Products, Inc., a Texas corporation, is a competitor of Wood in the manufacture of fiberglass bass boats. Individual defendants Richard Schultz and Donald Doty are managing officers of U.S. Bass and represented it throughout its association with Wood.

On August 3, 1981, Wood and Western Bass acting through Schultz entered into a promotional agreement whereby Wood provided certain products to Western Bass in return for exclusive promotional considerations. Specifically, for the 1980–81 bass season Wood agreed to furnish 13 Ranger boats and one trailer to be given as prizes at various tournaments; Wood also agreed to sell Western Bass 26 Ranger bass boats at dealer cost. In return, Western Bass was to grant Wood exclusive sponsorship and promotional rights for all Western Bass tournaments, guaranteed advertising space in Western Bass newspaper and magazine, and the right to display the Ranger name, products and logo on official tournament scoreboards, brochures, literature, and advertising and promotional materials.

In addition to setting out the parties' agreement for the 1980–81 seasons, the contract also included the following language:

> We have agreed that for the next five seasons after the 1980–81 season that you will not agree with any other boat and/or trailer manfuacturer [sic] for any kind of promotional programs until you have first given us the right to elect to continue the same or similar promotional arrangement described herein above in paragraphs 1, 2 and 3 (with the sole exception of local support and handling of boats at Tournaments of Champions held subsequent to the 1981 tournament.) If we elect to continue this arrangement from year to year for the said five seasons you further agree that no other boat and/or trailer manufacturer will be allowed to participate in any similar pro-

---

1. There is apparently some confusion over whether U.S. Bass should be characterized as an unincorporated association or as an alias or fictitious name of an Arizona corporation called Southwest Association of Bass Champions, Inc. We will discuss the issue *infra*.

motion unless we have approved such participation in writing, in advance.

B. In February, 1982, Wood and Western Bass concluded negotiations for continued association for the 1981–82 season. In return for the same promotional consideration provided by Western Bass the previous year, Wood agreed to provide Western Bass with 14 boats and one trailer at no cost for tournament prizes and to sell it 36 boats and 15 trailers at reduced costs. Similarly, in February, 1983, representatives of Wood and Western Bass again negotiated an agreement between the parties for the 1982–83 tournament season. In exchange for the same promotional consideration, Wood was to donate 13 boats with trailers and to sell 18 boats with trailers at reduced costs to Western Bass. In addition, Wood was to donate 18 $2,500 certificates good toward purchase of Ranger boats, pay Western Bass $5,000, and to sponsor a $15,000 barbecue for participants in the U.S. Open tournament.

In January, 1984, Wood and Western Bass continued their association for the 1983–84 fishing season. For the same consideration, Wood would donate 10 boats with trailers and sell 28 additional boats with trailers at reduced costs. Also, Wood agreed to loan Western Bass 60 Ranger boats for the Grand National Fly-Away tournament, to pay for a $14,760 barbecue and a $4,000 banquet, and to pay $11,480 to Western Bass.[2]

Representatives of Wood and U.S. Bass met again in October, 1984, to negotiate the terms of their agreement for the 1984–85 tournament. U.S. Bass submitted a proposal which called for Wood to provide 74 boats with trailers at no cost, to sell 114 boats and trailers at reduced cost, and to pay $350,000 to U.S. Bass. The proposal called for other miscellaneous perform-

ances from Wood and provided certain promotional and advertising considerations which would be granted in return by U.S. Bass to Wood. On November 6, 1984, Wood, acting through counsel, advised U.S. Bass that Wood did elect to continue the association entered into on August 3, 1981. Wood further advised that it did not desire to accept the proposal submitted by U.S. Bass, but anticipated that the arrangements for the 1984–85 season would be substantially similar to those in effect for 1983–84.

Negotiations continued between the parties, and on December 4, 1984, Wood offered a compromise agreement in which it offered to donate 29 Ranger boats complete with trailers, to memo bill an additional 18 boats and trailers,[3] to furnish 48 boats for use at the Grand National Fly-Away tournament, to sponsor certain meals served to tournament participants, and to forgive up to $23,000 per year of the debt incurred by U.S. Bass in 1983–84.[4] U.S. Bass did not respond to either letter and the association between Wood and U.S. Bass lapsed.

Sometime in 1984, U.S. Bass entered into negotiations with Skeeter to replace Wood for the 1984–85 season. By the time the association between Wood and U.S. Bass lapsed, Skeeter had apparently entered into an agreement with U.S. Bass. There is some evidence that Skeeter entered its contract in the summer of 1984 and, at least by November, 1984, knew of the existence of the contract between Wood and U.S. Bass.

C. Wood claims that under the quoted provision of the August 3, 1981, agreement it has a contractual right to an exclusive association with U.S. Bass for the 1984–85 tournament season. It seeks specific per-

2. Over the objections of the defendants, Wood offered the following estimates of the annual cost to it of its association with Western Bass:

| 1980–81 | $ 45,425.00 |
| 1981–82 | 106,388.00 |
| 1982–83 | 176,950.00 |
| 1983–84 | 208,297.00 |

3. It is not clear what "memo bill" means, but the effect would apparently be that U.S. Bass would have free use of the boats and trailers for one year.

4. Wood estimated that the cost to it of defendant's proposal would be $1,462,768 per year; the cost of its counteroffer would be $314,871.

formance of the 1981 contract for the 1984–85 season and a preliminary injunction preventing U.S. Bass from advertising or promoting Skeeter or any other competitor's products during the term of the original agreement. The defendants deny that the court has personal jurisdiction over them to be able to grant any relief and specifically deny that Wood is entitled to preliminary injunctive relief in any event.[5]

## II.

■■■ A. Because each defendant has denied the court's jurisdiction to grant relief, we must address that issue first as to each defendant. In *Jeanway Industries v. Knudson Mfg. Co., Inc.*, 533 F.Supp. 678 (W.D.Ark.1981), this court set out the guidelines it would follow in determining whether it had personal jurisdiction over a defendant who denies jurisdiction:

1. The question of whether a state long-arm statute applies in any case is a question of state law.

2. Under Arkansas law, the plaintiff has the burden of proving that a non-resident defendant has sufficient contacts with Arkansas to be sued *in personam.*

3. However, the non-resident defendant filing a motion to dismiss or quash has the burden of going forward and offering proof to sustain the allegations of no jurisdiction.

4. If it is determined that the Arkansas long-arm statute authorizes personal jurisdiction over the defendant, the court must then inquire whether the exercise of that jurisdiction would violate the due process clause.

*See Jeanway Industries, supra,* at 681–84. A *prima facie* showing of jurisdiction will not suffice, however, where a plaintiff seeks preliminary injunctive relief. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction

against him. Where a challenge to jurisdiction is interposed on an application for a preliminary injunction "[t]he plaintiff is required to adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits." (citations omitted) *Visual Sciences v. Integrated Communications,* 660 F.2d 56, 59 (2d Cir.1981).

■■ B. Plaintiff asserts that personal jurisdiction over defendant Skeeter is authorized by Ark.Stat.Ann. § 27–2502 C.1(d) which provides

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

. . . .

(d) causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct in this State or derives substantial revenue from goods consumed or services used in this State;

Wood alleges that Skeeter caused tortious injury in Arkansas by intentionally interfering with the contract between Wood and U.S. Bass.[6] Assuming for the moment that Wood has made a *prima facie* showing that Skeeter caused a tortious injury in Arkansas, section 27–2502 C.1(d) also requires some showing that Skeeter regularly does or solicits business or engages in other persistent conduct in Arkansas or derives substantial revenue from goods consumed or services used in the state. The only place we can find that plaintiff attempted to make such a showing is the introduction of a copy of a single page from the Little Rock Yellow Pages which shows advertisements for two boat dealers which contain the name Skeeter. We be-

---

5. None of the defendants waived their objection to the court's personal jurisdiction and each made a limited appearance only for the purpose of contesting such jurisdiction.

6. Arkansas does recognize malicious and willful interference with contractual rights and relationships of another as an actionable tort. *See, e.g., Mason v. Funderburk,* 247 Ark. 521, 525, 446 S.W.2d 543 (1969).

lieve that this page from the Yellow Pages is not a sufficient showing on the part of plaintiff that Skeeter maintained the level of contact with Arkansas required by section 27–2502 C.1(d). For this reason we find that Wood has failed to make a *prima facie* showing that the court has personal jurisdiction over Skeeter to order preliminary relief. Furthermore, plaintiff has fourteen (14) days from the date of this memorandum opinion to supplement the record in any appropriate manner to show that Skeeter has sufficient contacts of the sort required by the statute. We take defendant Skeeter's motion to dismiss under advisement to be ruled on at the end of the 14–day period. At that time we will also consider Skeeter's motion to transfer, if necessary.

C. Plaintiff contends that personal jurisdiction over U.S. Bass is authorized by Ark.Stat.Ann. § 27–2502 C.1(a) which provides

1. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a (cause of action) (claim for relief) arising from the person's

. . . .

(a) transacting any business in this State.

U.S. Bass argues that plaintiff has not established any factual basis for jurisdiction under section 27–2502 C.1(a). However, at the hearing Wood presented uncontroverted evidence that the original agreement was partially negotiated in Arkansas, executed in Arkansas, and performed in Arkansas to the extent that the boats were manufactured in the state. In addition, a major bass fishing tournament, the 1981 Grand National Fly-Away, was held on Bull Shoals Lake in Arkansas. We compare these contacts with the state to those found sufficient to authorize jurisdiction under section 27–2502 in *SD Leasing, Inc. v. Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982). In that case the Arkansas Supreme Court held that the purpose of the Arkansas long-arm statute was to expand the state's personal jurisdiction over nonresidents within the limits permitted by the due process clause. The court found a single contract executed in Florida, but reviewed and finally accepted in Arkansas, provided sufficient minimum contacts where monthly payments were mailed to Arkansas as well as other communications about the contract. We believe that the original agreement between Wood and U.S. Bass provided sufficient minimum contacts with Arkansas in light of *SD Leasing*.

Section 27–2502 C.2 provides a second requirement: if jurisdiction is to be based solely upon the statute, the cause of action must arise from those acts which establish the defendant's minimum contacts with the state. We have no difficulty with this requirement. Plaintiff's cause of action against U.S. Bass arises from the same contract which we believe provides sufficient minimum contacts with Arkansas.

Having concluded that personal jurisdiction is proper under Arkansas law, we must then determine whether the exercise of jurisdiction violates due process. U.S. Bass and Wood continued their association to their mutual benefit for at least four seasons under the original agreement. During that period the parties negotiated the terms of the agreement for each tournament season; there is evidence that representatives of U.S. Bass visited plaintiff's plant in Flippin, Arkansas, on occasion during this process. U.S. Bass derives benefits from its association with Wood due at least in part to the protections afforded by Arkansas law. It does not offend traditional notions of fair play and substantial justice to require U.S. Bass to defend against Wood's cause of action in Arkansas. The persistent relationship with plaintiff in Arkansas including the continued renegotiation of the terms of the association is sufficient to satisfy the requirements of due process.

U.S. Bass denies the court has jurisdiction over its person for other reasons. As previously alluded to, there is a dispute over exactly how U.S. Bass should be characterized. In its first amended and substituted complaint, plaintiff indicated it be-

lieved U.S. Bass was not organized as a corporation under the laws of any state; it described defendant as either a partnership or an unincorporated association. Subsequently, U.S. Bass filed certain documents with the court which suggest plaintiff's view of U.S. Bass was incorrect. The documents included a certificate of the Arizona Corporation Commission stating that Southwest Association of Bass Champions, Inc. (SWABC), was a corporation in good standing under the laws of the state of Arizona, a copy of a fictitious business name statement filed in Orange County, California, stating that Western Bass Fishing Association and U.S. Bass Fishing Association were fictitious names of SWABC, an Arizona corporation, and an affidavit of the controller of U.S. Bass stating, among other things, that he was an employee of SWABC which did business under the name of U.S. Bass Fishing Association.

It is not entirely clear what U.S. Bass's argument is about the effect of plaintiff's apparent reliance on a misnomer. If defendant is contending that no service was made upon SWABC because U.S. Bass was named in the complaint and summons, we find no merit in the argument. Defendant has alleged no prejudice to SWABC through plaintiff's use of the fictitious name, nor has SWABC alleged that it did not have actual notice of the pendency of the suit; in fact, it is obvious that SWABC did indeed have actual notice of the suit. *See, e.g., In re Nat. Student Marketing Litigation,* 413 F.Supp. 1159, 1160 (D.C.D. C.1976). Any defect in naming the proper defendant in this case can be remedied by amending service of process to show SWABC as defendant, if necessary. Fed. R.Civ.P. 4(h).[7]

▮ U.S. Bass also contends that there was insufficient service of process apart from plaintiff's reliance on a misnomer. Specifically, U.S. Bass objects to the fact that service was made upon the defendant by mail and that service was not made upon a proper officer of the corporation. Fed.R.Civ.P. 4(e), as amended in 1983, states: "Whenever a statute or rule of the court of the state in which the district court is held provides (1) for service of a summons …, service may … be made under the circumstances and in the manner prescribed in the statute or rule." Ark.R. Civ.P. 4(e)(3) permits service outside of Arkansas, when reasonably calculated to give actual notice, by any form of mail addressed to the person to be served and requiring a signed receipt. Also, *see, e.g., Aldridge v. Watling Ladder Co.,* 275 Ark. 225, 628 S.W.2d 322 (1982). U.S. Bass also objects that service was not made upon an officer of the corporation as required by Ark.Stat.Ann. § 27–346. However, that section is by its own terms limited to domestic corporations and is not applicable in this instance.

Based upon the above, we conclude that the court does have personal jurisdiction over U.S. Bass and its motion to dismiss should be denied.

D. Wood also claims that Arkansas law authorizes personal jurisdiction over individual defendants Richard Schultz and Donald Doty. Each individual defendant separately denies the court's jurisdiction over his person. Plaintiff relies on Ark. Stat.Ann. § 64–1216 which states that a person having a cause of action based upon a contract entered into in Arkansas against a foreign corporation not qualified to do business in the state has an equal cause of action against the corporate officer who entered into the contract. Therefore, plaintiff contends, because Schultz and Doty negotiated and entered into the original agreement in Arkansas, and because neither U.S. Bass nor SWABC is registered to do business in the state, the court can assert jurisdiction over the individual officers under section 64–1216. We cannot

---

7. "Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations. So also with a corporation which uses more than one name." *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1387 (D.Neb.1977).

agree with this analysis. Although section 64–1216 may give Wood a potential cause of action against Schultz and Doty, *see, e.g., Commercial Bank & Trust Co. v. Dixie Sound, Etc.,* 468 F.Supp. 578, 585 (E.D.Ark.1979), it does not authorize the exercise of personal jurisdiction over non-residents. Such jurisdiction, if any exists, must be asserted under Ark.Stat.Ann. §§ 27–2501, *et seq.*

> A problem ... is presented when plaintiff is seeking to acquire jurisdiction over the principals of a corporation on an individual basis, and the individuals contend that all of their acts within the jurisdiction were carried out in a corporate capacity. It appears that the corporation will ordinarily insulate the individuals from the court's personal jurisdiction. Thus, jurisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute.

4 Wright & Miller, *Federal Practice and Procedure* § 1069 (Supp.1985 at 69).

■ Such a problem exists in this instance. Although plaintiff alleged that Schultz and Doty negotiated and executed the original agreement as principal partners and investors in U.S. Bass, an unincorporated association, the defendants offered evidence that U.S. Bass was a fictitious name for SWABC, an Arizona corporation. The defendants also argued that neither Schultz nor Doty personally performed any of the acts necessary to authorize exercise of personal jurisdiction under section 27–1502 C.1(a). In so doing, the defendants, we believe, met their burden of going forward and offering proof to sustain their allegations of no jurisdiction. Plaintiff does not apparently dispute the corporate existence of U.S. Bass/SWABC, nor does it cite any actions by the individual defendants personally which would support personal jurisdiction other than their representative roles in negotiating and executing the agreement with Wood.

In *Frank v. Steel, Judge,* 253 Ark. 338, 485 S.W.2d 737 (1972), the Arkansas Supreme Court considered a challenge to the court's personal jurisdiction over the president of a Louisiana corporation. Although the court believed that the corporation had purposely availed itself of the privilege of conducting activities in Arkansas sufficient to warrant the acquisition of jurisdiction over it, it could find no facts supporting personal jurisdiction over the corporation's president who had acted only in his representative capacity. We believe the same result is required here where plaintiff has shown no facts to counter the defendants' insistence that any actions taken by Schultz and Doty were taken in their representative capacity.[8] *Compare General Signal Corp. v. Donallco Inc.,* 649 F.2d 169 (2d Cir.1981) (court did not have personal jurisdiction over non-resident individual defendant although president and sole stockholder of corporation) with *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134 (6th Cir.1982)(personal guaranties executed by non-resident officers and/or shareholders of corporation were sufficient to give court personal jurisdiction over individual defendants).

Based on the foregoing, we conclude that plaintiff has not established any basis for personal jurisdiction over the individual defendants Schultz and Doty. Their motions to dismiss for lack of personal jurisdiction should be granted.

### III.

■ Plaintiff Wood objects to the magistrate's recommendation that its request for preliminary injunction be denied. The question of whether a preliminary injunction should issue involves consideration of four factors:

(1) The threat of irreparable harm to the movant;

---

**8.** We also note that plaintiff does not contend that the corporate identity of SWABC should be ignored. *See, e.g., Product Promotions v. Cousteau,* 495 F.2d 483 (5th Cir.1974).

(2) The state of balance between this harm and the injury that granting the injunction will inflict on the parties litigant;

(3) The probability that movant will succeed on the merits; and

(4) The public interest.

*Roberts v. Van Buren Public Schools,* 731 F.2d 523, 526 (8th Cir.1984); *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir.1981). However, the decision to issue or not to issue preliminary relief should not be made simply upon the mechanical application of the preceding factors. More properly, the question should be "whether the balance of the equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc., supra,* at 113.

The magistrate recommended that Wood's request for a preliminary injunction be denied based upon his finding that the August 3, 1981, contract was "nothing more than an unenforceable agreement to make an agreement." Plaintiff objects to this characterization of its relationship with U.S. Bass and contends that it held either a valid option to renew the agreement for five seasons or, in the alternative, a right of first refusal of any promotional agreement between U.S. Bass and any other boat manufacturer.

■ "In order to be enforceable a contract must be definite and certain in all of its terms and conditions in order that the court may know what the parties have agreed upon." *Phipps & Brown v. Storey,* 269 Ark. 886, 601 S.W.2d 249 (Ark.Ct.App. 1980). The difficulty in interpreting the original agreement between Wood and Western Bass lies in that portion of the contract cited earlier. Plaintiff contends that that portion of the contract gave Wood

the option to elect to continue the "same or similar promotional arrangement" for the five following bass fishing seasons.[9] The record before the court shows that while the parties did continue their association for three seasons, the consideration due from Wood for the promotional and advertising activities of U.S. Bass was apparently the subject of renegotiation each year. Plaintiff argues that any uncertainty in the agreement may be supplemented and resolved by the subsequent acts, agreements and declarations of the parties. *Swafford Ice Cream v. Sealtest,* 252 Ark. 1182, 483 S.W.2d 202 (1972). However, Wood has not demonstrated just how the mutual actions of the parties furnish any index to the meaning of "same or similar promotional arrangement." In fact, plaintiff's own evidence shows that Wood's contribution to U.S. Bass rose from $45,425 in 1980–81 to $208,297 in 1983–84, but there is no showing that any formula or objective standard was used to calculate Wood's contribution each season. Even if we were to determine somehow that plaintiff was entitled to preliminary injunctive relief, the court would be at a loss to fashion relief without making a contract for the parties.

We find that plaintiff has not sufficiently demonstrated the probability that it will succeed on the merits of its case. Such a finding by itself suggests strongly that preliminary relief should not issue. In addition, plaintiff has not shown any way in which either the public interest or the state of balance between the relative damages which each party may suffer requires preliminary relief. Having carefully weighed the equities in this matter, we cannot say that the balance so favors plaintiff that the court is required to intervene and maintain the status quo. We therefore deny plaintiff's motion for a preliminary injunction.

---

**9.** Plaintiff's contention that the contract granted Wood an option depends in part upon accepting plaintiff's proposed interpretation of certain ambiguous language in the contract. Wood argues that the pronoun "we" in the first sentence ("*We* have agreed that for the next five seasons ...") refers to both Wood and U.S. Bass, but that the

"we" in the second sentence ("If *we* elect to continue this arrangement from year to year ...") refers only to Wood. While this interpretation may be reasonable, we think it equally reasonable that "we" may refer to both parties in both instances.

A separate order summarizing the findings of the court will be concurrently entered.