**Carl A. BEACHY and Saundra K. Beachy, Plaintiffs,**

v.

**EAGLE MOTORS, INC., Avenue Auto Sales, Inc., and Donald N. Watson, Defendants.**

Civ. No. F 84–358.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 26, 1986.

Ronald L. Sowers and William P. Fox, Fort Wayne, Ind., for plaintiffs.

Richard I. Snouffer, Fort Wayne, Ind., and Harold Hurt, Murray, Ky., for Eagle Motors and Donald N. Watson.

James H. Ebel, Farmington Hills, Mich., for Avenue Auto.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court after a hearing on plaintiffs' motion for default judgment held June 23, 1986. On May 16, 1986, the Clerk of this court entered a default against defendants Eagle Motors, Inc. and Donald Watson. At the June 23, 1986 hearing, neither defendant appeared.

This cause arises out of the sale of a motor vehicle to the plaintiffs which had its odometer rolled back in violation of the federal Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1984. The vehicle, a 1981 Oldsmobile Omega, was sold by Eagle Motors to Glenbrook Dodge, who in turn sold the car to the plaintiffs in March 1984. Eagle Motors had listed the mileage of the car on the Odometer Mileage Statement as 33,274 miles when in fact the car had over 75,000 miles on it. The car was purchased for $7,150.

The defendants Eagle Motors, Inc. and Donald Watson have failed to answer certain interrogatories as well as failed to attend the final pre-trial conference in this case. Under Rules 37(b)(2)(C) and 16(f) of the Federal Rules of Civil Procedure, the entry of default is justified, and the court will enter a default judgment against Eagle Motors, Inc. and Donald Watson.

The June 23, 1986 hearing covered the issue of the plaintiffs' damages. Under the Motor Vehicle Information and Cost Savings Act,

> Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—
>
> (1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
>
> (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

15 U.S.C. § 1989(a). Thus, plaintiffs here are entitled to their "actual damages" plus attorney's fees and costs. The term "actual damages" has been defined as follows:

> Although "actual damages" is not defined in the statute, it seems reasonable to give it the meaning commonly applied to fraud cases. This is the difference between the amount paid by the plaintiffs—not the value of the car if it had been as represented—and the fair market retail value of a vehicle of the type purchased with the number of miles actu-

ally traveled by the car, plus such outlays as are legitimately attributable to the acts of the defendants.

*Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1388 (D.Neb.1977), *aff'd,* 578 F.2d 721 (8th Cir.1978).

■ Plaintiffs paid $7,150 for the vehicle. David Phillips, a used car sales manager with expertise in the appraisal of used cars, testified that the fair market retail value of a similar vehicle with over 75,000 miles on it would have been between $4,000 and $4,500 dollars. The court finds that the fair market retail value of the vehicle in question was $4,200 at the time of the sale to the plaintiffs in March 1984. Thus, the difference between the amount paid and the fair market retail value is $2,950.

In addition, the plaintiff submitted repair bills incurred after the vehicle was purchased from Glenbrook Dodge. Those bills are for the following work:

—replacement of a system coolant sensor and testing of air conditioning system for leaks (Exhibit 1–C);

—purchase of two tires (Exhibit 1–D);

—the disassembly and replacement of the constant velocity joint, and the replacement of the power steering and alternator belts (Exhibit 1–E);

—checking to see if the odometer had been tampered with (Exhibit 1–F);

—work on the carburetor and install an owner's cap, rotor and fuel filter, test and tune the engine, service and replace brake parts, and test the alternator (Exhibit 1–G); and

—car rental costs while the car was undergoing repairs (Exhibit 1–H).

Plaintiffs argue that these repair costs fall within the "outlays legitimately attributable to the acts of the defendants" aspect of the "actual damages" definition of *Duval.*

It is certainly true that repair bills can be part of the actual damages recoverable under 15 U.S.C. § 1989. *See Gonzales v. Van's Chevrolet, Inc.,* 498 F.Supp. 1102, 1104 (D.Del.1980); *Duval,* 425 F.Supp. at 1388. However, the *Duval* definition requires that the outlays be "legitimately

attributable" to the acts of the defendants (i.e., to the rollback of the odometer). The *Duval* court did not allow any damages for repairs made to the cars involved in that case because

[h]ere, no expenses were shown to have been attributable to the acts of the defendants. To be sure, substantial repairs were reasonably done on the cars, but what amount represented repairs that would not have been necessary had the cars been the lower-mileage vehicles the odometers indicated they were, was not established or even attempted.

425 F.Supp. at 1388. Thus, in order for a plaintiff to recover repair bills as "actual damages" under § 1989, he must show that repairs would not have been needed if the car had in fact been a car with the lower mileage indicated on the odometer. This could include repairs which were necessitated by the increased use (as measured in miles driven) and which would not have been needed if the car had not undergone such use. This could be established through testimony indicating that the repair had to be made because the particular part was worn out by use consistent with the higher mileage but would not have worn out by use at the lower mileage.

■ What is essential is that the plaintiffs must prove that the repair was necessitated by the extra use. Although common sense might dictate that the more a vehicle is used, the more likely its parts will be worn down or in need of replacement, this notion alone is insufficient to justify awarding damages for repairs undertaken by the plaintiffs. The fact that a car with higher mileage commands a lower retail price indicates that the market will take into consideration the higher probability of need for repair when determining the price for the higher mileage vehicle. A buyer of a higher mileage vehicle will pay less for such a vehicle because he knows that the costs occasioned by greater use of the car will come sooner than for a lower mileage version of the same car. The buyer gets the benefit of a lower cost up front, but assumes the risk that other costs may soon surface. Once the market forces set

a price, the buyer cannot complain when those costs begin to accrue (unless they are the result of misrepresentations on the part of the seller) because that is the risk inherent in such a purchase, and that is the risk which gave the buyer a lower price in the first place. The point here is that repairs occasioned by normal wear and tear of the vehicle are costs reflected in the fair market retail price of a used car. Thus, when an odometer rollback plaintiff is awarded damages for the difference between the price paid and the fair market retail value, he or she is already "compensated" for repairs incurred because of normal wear and tear of the higher mileage vehicle—the market's valuation of the value-depressing effect of such costs is contained in a lower fair market retail price. Thus, the only repairs for which a plaintiff can recover are those repairs which can be affirmatively shown to have been occasioned by the misrepresentation inherent in an odometer rollback. For example, if a plaintiff could show that some part of the vehicle would not be worn out or need replacing at the misrepresented mileage but would need replacing at the actual mileage, then the cost of repairing or replacing such a part would be an outlay "reasonably attributable" to the defendant's acts and would be compensible, for the buyer would not have been taking the risk of repair to that part into account when bargaining for the sale price. Absent such a showing, however, the court cannot say that the fair market value of the car at the actual mileage would not reflect the risk of incurring repair costs inherent in such a vehicle, and thus general claims for repairs incurred after purchase cannot be considered actual damages suffered as a result of the defendant's acts.

■ Here, the plaintiffs made no attempt to show that any of the repairs undertaken would not have been necessary at the lower mileage, and thus the court finds that they are not actual damages under 15 U.S.C. § 1989. However, the plaintiff did incur a $25 expense for having the vehicle checked for odometer tampering. That is a cost which would not have been subsumed within the market price of the vehicle; parties assume that they are dealing with relatively fair and honest persons on the other side of a transaction, and thus the market would not discount the price to reflect the need to see if the other side in fact cheated on the deal. The defendants sold Glenbrook Dodge a car which apparently had mechanical problems sufficient to warrant the plaintiffs' suspicion of odometer tampering, and Glenbrook in turn sold that car to the plaintiffs. The $25 charge is an outlay which can be reasonably attributed to an act of the defendants, and will therefore be included in plaintiffs' actual damages.

■ Therefore, the plaintiffs' actual damages are $2,975, which when trebeled come to $8,925. As part of settlements with other defendants, the plaintiffs received $1,750, which should be subtracted from the total damages, thus entitling plaintiffs to damages in the amount of $7,175. In addition, the plaintiffs submitted an affidavit detailing a total of 126.2 hours of attorneys' work in this case. At the requested rate of $60 an hour, the plaintiffs are entitled to attorney's fees of $7,572.

For the reasons stated above, the court hereby ENTERS a default judgment against defendants Eagle Motors, Inc. and Donald Watson in the amount of $7,175 in damages and $7,572 in attorney's fees as well as the costs of this action.