Gloria CANTRELL, Plaintiff,

v.

THALER FORD SALES, INC., Defendant.

No. C–2–78–222.

United States District Court, S. D. Ohio, E. D.

March 5, 1980.

R. William Berry, Chesapeake, Ohio, for plaintiff.

Paul O. Scott, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This action is brought under the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. §§ 1901–1991. In particular, plaintiff brings her action under Subchapter IV of the Act, which is legislation designed to prohibit tampering with odometers on motor vehicles and to compensate persons victimized by the tampering. 15 U.S.C. §§ 1981, *et seq.* The matter is presently before the Court on plaintiff's motion for summary judgment "on the question of measure of damages to be assessed herein." For the reasons stated below, plaintiff's motion will be granted in part and denied in part.

The facts of this case pertinent to this motion are as follows. In the summer of 1976 plaintiff purchased a new 1976 Ford Thunderbird automobile from the defendant Thaler Ford Sales, Inc., at its place of business in Gallipolis, Ohio. The odometer reading at the time of purchase was 109 miles. Upon subsequent investigation, the plaintiff learned, and the parties have stipulated, that the actual mileage on the car was 1,061 miles at the time of the purchase. In fact it appears that, unknown to the plaintiff, the Gallipolis dealer's lot was merely the last of several resting spots for plaintiff's peripatetic Thunderbird. The parties have stipulated that the plaintiff's automobile began its odyssey at Richards Ford, Inc. in Baton Rouge, Louisiana. Richards then sold the car to Shelton Motors of Covington, Tennessee, and a Richards employee drove the car from Baton Rouge to Covington, a distance of approximately 410 miles. Subsequently, defendant Thaler contacted Shelton and acquired the Thunderbird from it. Defendant's president, James R. Thaler, drove the automobile from Covington to his dealership at Gallipolis, Ohio, a distance of approximately 542 miles. Defendant Thaler admits that during the trip from Covington to Gallipolis the odometer was not connected. Thaler claims, however, that it had no knowledge about the prior transportation of the car from Louisiana to Tennessee.

Thaler attempted to implead as third-party defendants both Shelton Motors and Richards Ford; however, by an order dated August 28, 1979, this Court found that it lacked *in personam* jurisdiction over both Shelton and Richards, and dismissed the

third-party complaint. Therefore, Thaler remains the sole defendant in this action.

The Court's jurisdiction in this matter is based on 15 U.S.C. § 1989, which provides as follows:

§ 1989. *Civil actions to enforce liability for violations of odometer requirements; amount of damages; jurisdiction; period of limitation*

(a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.

Further, § 1984 of Title 15 states:

§ 1984. *Change of mileage indicated on odometer prohibited*

No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent to change the number of miles indicated thereon.

As stated above, the defendant has admitted that its agent drove plaintiff's car from Covington, Tennessee, to Gallipolis, Ohio, with the odometer disconnected. Although defendant's intent remains a matter in issue, for purposes of this motion the Court will assume that defendant has violated the Act. Given this assumption, plaintiff's motion for summary judgment raises two issues bearing on the nature and extent of damages to be assessed under the Act.

■ Plaintiff argues that the "actual damages" to be used in computing her award under the Act should be measured by the difference in market value of a 1976 Ford Thunderbird with actual mileage of 109 miles and the market value of the same automobile with actual mileage of 1,061 miles. Defendant, on the other hand, argues that the calculation of actual damages should start not with the fair market value of the new Ford Thunderbird, but with the price paid for that Thunderbird by the plaintiff. From that price, defendant argues, the fair market value of the automobile actually received should be subtracted. Upon consideration, the Court agrees with the defendant and with the reasoning of Chief Judge Urbom on this matter:

Although "actual damages" is not defined in the statute, it seems reasonable to give it the meaning commonly applied to fraud cases. This is the difference between the amount paid by the plaintiffs—not the value of the car if it had been as represented—and the fair market retail value of a vehicle of the type purchased with the number of miles actually traveled by the car, plus such outlays as are legitimately attributable to the acts of the defendants.

*Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1388 (D.Neb.1977); *aff'd.*, 578 F.2d 721 (8th Cir. 1978). Thus, insofar as plaintiff's motion seeks judgment on a finding that actual damages shall be measured by the difference in fair market value of the car purchased and the car as represented, that motion must be denied.

■ The second issue raised by plaintiff's motion is the extent of the damages attributable to defendant Thaler. Plaintiff argues that Thaler should be liable to it for the full damages as determined by the method stated above. Defendant, on the other hand, states that it should be liable only for the incremental amount of damage attributable to its transportation of the car over the approximately 542 miles from Covington to Gallipolis with the odometer disconnected. In other words, defendant claims that as a matter of law liability may not attach to it for the approximately 410

unrecorded miles put on the car while in transit from Baton Rouge to Covington. It appears that the precise question raised in this part of plaintiff's motion has not been directly decided by the courts. However, upon careful consideration, this Court is of the opinion that defendant's argument is not well taken and plaintiff's motion should be granted.

The issue to be decided on this motion is essentially as follows. Where the defendant transferor is the last link in a chain of wrongdoers, and where the defendant (as must be assumed for purposes of this motion) is without knowledge of the wrongdoing of prior transferees,[1] is the defendant liable for the entire wrongdoing or only that attributable to its own knowing and fraudulent activity? Of course, it is clear that if the factfinder ultimately determines that defendant Thaler had knowledge of the previous odometer tampering, then it may be held liable for *all* damages. *Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397 (S.D.W. Va.1975); *see also, Duval v. Midwest Auto City, Inc., supra; Mataya v. Behm Motors, Inc.*, 409 F.Supp. 65 (E.D.Wis.1976). The plaintiff contends that *Stier v. Park Pontiac, Inc., supra*, should control the outcome of this case. In *Stier*, there was a single initial odometer tampering which occurred at the head of the transfer chain. Further, as the parties to that case stipulated, subsequent members of the chain certified the automobile's mileage knowing that the odometer reading was erroneous. Given those facts, viewed in light of the legislative history of the Act, the district court held that liability for all damages could be imposed upon any person in the chain violating the law. 391 F.Supp. at 401.

The posture of the present case, as defendant correctly notes, is somewhat different from that in *Stier*, where all transferors were defendants before the court and where it was stipulated that all transferors acted with knowledge of prior tampering. Here, as stated above, only the last trans-

feror in the chain is before the Court, and it must be assumed that the transferor is without knowledge of prior wrongdoing. Despite this difference, the Court is of the opinion that the policies underlying the Act require that a knowing violator who is properly before the Court be subject to liability for the *full* damage suffered by the plaintiff. Certainly congressional intent would be implemented by this approach. As observed by several courts which have considered the matter:

> The purpose of the statute is to punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts.

*Delay v. Hearn Ford*, 373 F.Supp. 791, 796 (D.S.C.1974); *accord, Kantorczyk v. New Stanton Auto Auction, Inc.*, 433 F.Supp. 889, 893–94 (W.D.Pa.1977); *Stier, supra*, 391 F.Supp. at 401. As the court stated in *Jones v. Fenton Ford, Inc., supra*, 427 F.Supp. at 1337–1338, "a clear public policy is expressed in the . . . Act in favor of adequately protecting consumers who purchase automobiles which may suffer from an odometer defect." *See*, 15 U.S.C. § 1981.

In view of this policy the Court finds that a consumer would not be "adequately protected" by an interpretation of the Act which would limit the "actual damages" recoverable against an admitted wrongdoer to the incremental amount of damage caused by that wrongdoer, assuming such damage could even be separately determined. In the present case, for example, this "incremental" damage theory neglects the fact that, absent defendant Thaler's misrepresentations to the plaintiff, the plaintiff—seeking a "new" car—would likely not have purchased the 1976 Thunderbird and would not have been damaged at all. The Court is especially reluctant to credit defendant's theory in the present context

i. Because of this assumption the Court will not address the issue whether the defendant had constructive knowledge of the prior tampering and whether such knowledge is sufficient to provide an inference of fraudulent intent. *See, Nieto v. Pence*, 578 F.2d 640 (5th Cir. 1978); *Jones v. Fenton Ford, Inc.*, 427 F.Supp. 1328 (D.Conn.1977).

**532**

where the Court is without jurisdiction over the transferors in the chain preceding defendant Thaler, and against whom plaintiff could seek relief only in distant jurisdictions. Such could hardly have been the intent of the Congress which desired to "reward" defrauded purchasers for bringing violators of the Act before the federal courts.

Assuming Thaler had no knowledge of the prior tampering, it certainly had an opportunity to discover such tampering before transferring the automobile to the plaintiff. The remedial purposes of the Act, in the Court's view, dictate that the defendant auto dealer, not the consumer, bear the burden of discovering prior misrepresentation. In addition, although the congressional aims are arguably furthered by the existence of other elements in the statutory scheme which may be brought to bear on the practice of odometer tampering; *see, e. g.,* 15 U.S.C. §§ 1990b, 1990c, 1990d and 1990e; *Duval v. Midwest Auto City, Inc., supra,* 425 F.Supp. at 1388–1389, the Court agrees with the practical opinion of the United States Court of Appeals for the Fifth Circuit that "[p]rivate prosecution is needed to make the Act effective." *Nieto v. Pence,* 578 F.2d 640, 643 (5th Cir. 1978). Particularly where Congress has made explicit reference in enacting this statute to the movement of motor vehicles in interstate commerce, *see,* 15 U.S.C. § 1981, the Court finds that private prosecution to effectuate the Act would be unduly hindered by a decision, such as defendant seeks here, which would require a plaintiff consumer to pursue his claim for damages in a piecemeal manner.

Accordingly, upon careful consideration and for the reasons stated hereabove, the Court finds that the second part of plaintiff's motion for summary judgment is well taken and should be granted.[2] In summary, plaintiff's "actual damages" will be determined by deducting from the price paid by

plaintiff for the automobile in question the fair market retail value of the same automobile which has been driven the number of miles which were actually on the vehicle when plaintiff acquired it from defendant's dealership.

So ORDERED.

---

2. This decision is not in conflict with *Chapotel v. Bailey Lincoln/Mercury, Inc.,* 355 So.2d 615 (La.App.1978), cited to the Court by defendant. Defendant has apparently misread the word "solidary," a state statutory term used by the Louisiana court meaning joint and several, to mean "solitary" or independent. Read properly, the holding in *Chapotel* has no relevance to the present case.