Barry M. WILLIAMS

v.

**TOYOTA OF JEFFERSON, INC. Gulf- port Auto Auction, Inc. Gene H. Sim- mons, Inc. formerly Tim's Trading Post, Inc.**

Civ. A. No. 84–5346.

United States District Court,
E.D. Louisiana.

March 9, 1987.

John V. Seago, Covington, La., for plaintiff.

Fernand F. Willoz, III, New Orleans, La., for Toyota of Jefferson, Inc.

Linda A. Liljedahl, New Orleans, La., for Gulfport Auto Auction, Inc.

Kenneth F. Sarana, Hammond, La., for Gene H. Simmons, Inc.

## FINDINGS AND CONCLUSIONS

LIVAUDAIS, District Judge.

On July 26, 1983, Barry M. Williams, then aged 19, went through one of the learning experiences to which life subjects the young as they pass into adulthood. He bought a used car. As a result, he has sued the automobile dealer from whom he purchased the vehicle, Toyota of Jefferson, Inc. (Toyota of Jefferson); the dealership from which Toyota of Jefferson acquired the vehicle, Tim's Trading Post (Tim's); and an automobile auction service that handled the transfer from Tim's to Toyota of Jefferson, Gulfport Auto Auction, Inc. (Gulfport), for odometer violations under provisions of the Motor Vehicle Information and Cost Savings Act (the Act), 15

U.S.C. § 1981 et seq. An additional claim for violation of the Act with respect to a second vehicle has been brought against Toyota of Jefferson alone, along with pendent state law claims in redhibition and for unfair trade practices. This Court has jurisdiction under 28 U.S.C. § 1331.

The following facts are entered on the basis of the stipulations of the parties and the evidence presented during a non-jury trial.

### The Toyota Vehicle

On or about July 26, 1983, Toyota of Jefferson sold to Barry M. Williams a 1980 Toyota Tercel for $4,100.00. At that time, and at all times pertinent to this action, Toyota of Jefferson was engaged in the business of buying and selling used automobiles. On the bill of sale, Toyota of Jefferson, through its agent, Bruce Cox, noted that the mileage on the vehicle was 34,367 miles. The automobile dealership was familiar with odometer disclosure statements, for it required the plaintiff to complete one concerning the car that he was trading in. However, Toyota of Jefferson failed to furnish Williams with such a statement, or a title document, or the prior bills of sale on the car, at the time of the transfer.

The subject vehicle had been purchased for resale by Toyota of Jefferson from Tim's on July 19, 1983. According to testimony of Bruce Cox, the odometer disclosure statement furnished by Tim's agent, Rick Kitchens, to him as agent of Toyota of Jefferson, did not contain a mileage figure at the time of the transfer. It indicated, furthermore, that the odometer reading should not be relied upon as registering the actual mileage. Some time subsequent to the transfer, the blank left for the mileage figure was filled in with the word "unknown", but Bruce Cox denied completing the form himself.

The title document introduced at trial indicated that before it was sold to Tim's, the Toyota Tercel had had two prior owners. The first, George Robinson, III had sold the car on June 23, 1983, certifying on his disclosure statement an odometer reading of 66,072 miles. Robinson's vendee, Adams Toyota of Baton Rouge, then transferred the vehicle to Tim's on July 5, 1983; the odometer mileage statement supplied by Adams Toyota certified an odometer reading of 66,124 miles. Sometime between the sale by Adams Toyota to Tim's on July 5 and the sale by Toyota of Jefferson to Barry Williams on July 26, the odometer on the Tercel was "rolled back". Although the actual mileage on the car at the time of the transfer to the plaintiff cannot be determined, the evidence indicates that it was at least 66,124 miles rather than the 34,367 miles read from the odometer and represented on the bill of sale from Toyota of Jefferson as the mileage on the car. According to the testimony of John T. M. Baldwin, an expert on automobile values, mileage of 66,124 rather than 34,367 on a 1980 Toyota Tercel would reduce the value of the car at the time of purchase by $1500.00. Barry Williams professed satisfaction with the car, which he totalled in a one-car accident.

### The BMW Vehicle

On or about January 28, 1984, Barry M. Williams agreed to purchase from Toyota of Jefferson a 1975 model BMW 2002 for $3,565.51. He signed a Retail Purchase Order which stated that the mileage on the car was 54,124 miles. Although Williams paid for the car on January 30, 1984, he did not receive a bill of sale until February 11, 1984. That document repeated the mileage information on the purchase order: 54,124 miles. Once again, Toyota of Jefferson failed to furnish an odometer disclosure statement to the plaintiff at the time of the sale. Moreover, Williams testified that during the time that he used the car, the odometer reading remained constant at 54,124 miles. The odometer on the BMW was inoperable and incapable of recording mileage at the time of its transfer to Barry Williams.

Toyota of Jefferson had at least constructive, if not actual knowledge that the odometer was non-functional, and that it could not be relied upon to reflect the actual miles that the car had been driven. Toyota of Jefferson and its affiliated company, Toyota Westbank/Tri-Parish Auto Sales,

Inc., had had possession of the BMW for more than six months prior to the sale to Williams. During that time, Toyota Westbank had performed extensive repairs upon the vehicle, as evidenced by the repair orders dated September 8 and October 3, 1983.

At the time of the sale to Williams, the non-functional odometer was the least of the BMW's problems. Among the other vices besetting the unfortunate vehicle were a leaking head gasket, a warped cylinder head, a deteriorated radiator which broke into four pieces shortly after purchase, a bent frame, broken motor mounts, and a wrinkled firewall, indicating, according to the expert testimony of C. Douglas Johnson, Jr., a professional repairman of foreign cars, that the car had been wrecked. From salt deposits at various locations throughout the engine and chassis, he concluded that the car had been submerged in water. As a result, the vehicle, immediately after purchase, could not be driven for more than a very short distance without stopping to add water. Ultimately, it could not be driven at all. It is not difficult to credit the plaintiff's testimony that he would not have purchased the car had he known of these defects; because of them, he got less than three weeks' use out of the BMW.

Toyota of Jefferson had at least constructive, if not actual knowledge of the latent defects of the BMW. As we have noted above, Toyota Westbank, an affiliate of Toyota of Jefferson, had performed extensive repairs on the car during the six months preceding the sale. Mr. Johnson, in his expert testimony, established that any experienced mechanic who looked at the oil in the BMW would have known that water was leaking into it. Yet Toyota of Jefferson either did not investigate and discover the blown head gasket, or did, and concealed the defect from the plaintiff. Toyota of Jefferson did not present at trial any evidence that an intervening cause had produced these defects after the sale.

The plaintiff tendered the BMW to Toyota of Jefferson for repairs in mid-March, 1984. From that time until June 21, 1984,

the car sat on the defendant's lot; the dealership had ample opportunity to repair it, but either could not or would not. On June 21, 1984, Barry Williams had the car towed away for attempted repairs by Mr. Johnson and by A-1 Radiator of Covington. These attempts, which cost the plaintiff $814.20, were unsuccessful, owing to the seriousness of the defects in the BMW. Therefore, Mr. Williams sought recission of the sale for redhibitory vices in the thing sold, and tendered the vehicle back to Toyota of Jefferson. Toyota of Jefferson has refused the tender. The BMW has since become a fixture in the Williams' back yard, while Barry Williams, according to his uncontroverted testimony, continues to pay on the promissory note for a loan of $3,565.51 at 18% interest per annum, which he obtained on January 31, 1984 and used to finance the car.

*The Complaint Under the Act*

The Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 et seq., was passed by Congress "to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers." To effectuate this goal, § 1988 of the Act empowered the Secretary of Transportation to prescribe rules requiring the disclosure of actual mileage. Toyota of Jefferson, in its conduct with respect to both of the vehicles purchased by Barry Williams, disregarded these rules.

The Odometer Disclosure Regulations, 49 CFR §§ 580.1–580.7, require that a transferor of a vehicle furnish a written statement to the transferee before executing a transfer of ownership document. Besides supplying such information as names, addresses, date of transfer, vehicle identity, and odometer reading, the statement must certify that, to the best of the transferor's knowledge, the odometer reading reflects the actual miles that the vehicle has been driven, and that the transferor has no knowledge that anyone has altered, set back, or disconnected the odometer. 49 CFR §– 580.4(a)–(c). Toyota of Jefferson provided Mr. Williams with nothing even approximating this statement for

either vehicle, though its agents were clearly aware that it was required, for the plaintiff had to complete one in order to trade in a Monte Carlo for the Toyota Tercel. Thus, the defendant violated § 1988(b) of the Act, which provides, "No transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such a rule". In addition, in acquiring the 1980 Toyota vehicle for resale, Toyota of Jefferson accepted a written disclosure statement which was incomplete, violating § 1988(c). Whether § 1984, prohibiting alteration of an odometer's mileage reading, was violated by Toyota of Jefferson or by Tim's is unknown. However, such a finding is immaterial; 15 U.S.C. § 1989 declares that any person who violates *any* requirement imposed by the Act shall be liable, provided that the violation is coupled with the intent to defraud. Toyota of Jefferson's intent must, therefore, be examined.

■ The United States Court of Appeals for the Fifth Circuit has furnished a guideline for the satisfaction of the requirement of intent to defraud in *Nieto v. Pence*, 578 F.2d 640 (1978). After carefully considering the legislative history of the Act, the Court concluded that "if defendant had constructive knowledge that the odometer reading was incorrect, he violated § 1989". *Id.* at 642. Such a defendant incurs civil liability to his transferee:

> We find that a transferor who lacked actual knowledge may still be found to have intended to defraud and thus may be civilly liable for a failure to disclose that a vehicle's actual mileage is unknown. A transferor may not close his eyes to the truth. If a transferor reasonably should have known that a vehicle's odometer reading was incorrect, although he did not know to a certainty the transferee would be defrauded, a court may infer that he understood the risk of such an occurrence.

*Id.*

In the case of the Toyota vehicle, Toyota of Jefferson had received a disclosure statement from Tim's, indicating that the mileage on the odometer could not be relied upon. In the case of the BMW, Toyota of Jefferson and its affiliate, Toyota Westbank, had had possession of the car for six months prior to the sale to Williams, and had performed extensive repairs, which should have brought to light the fact that the odometer was nonfunctional, and what that fact implied about the accuracy of its reading. Yet, in both instances, the defendant failed to disclose the unreliability to the plaintiff. Following the Fifth Circuit, this Court infers that the defendant reasonably should have known that both odometer readings were incorrect, and understood the risk that the transferee would be defrauded in both transactions.

*Damages Under the Act*

■ § 1989 of the Act provides for damages of three times the amount of actual damage sustained, or $1500.00, whichever is greater. The method of calculating damages favored by the courts is to utilize the difference between the fair market value of the car with the actual mileage thereon, and the amount paid for the automobile by the purchaser, plus any other damages that the purchaser may have incurred. *See, e.g., Gonzales v. Van's Chevrolet, Inc.*, 498 F.Supp. 1102, 1103 (D.Del.1980); *Cantrell v. Thaler Ford Sales, Inc.*, 485 F.Supp. 528, 530 (E.D.Ohio 1980); *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1388 (D.Neb.1977), *aff'd.*, 578 F.2d 721 (8th Cir. 1978); *Klein v. Pincus*, 397 F.Supp. 847, 851 (E.D.N.Y.1975). Expert testimony at trial established that the price differential between a 1980 Toyota Tercel with 66,124 miles and one with 34,367 miles was $1500.00. The odometer rollback, as noted above, caused no additional damages to the plaintiff. Thus, the damages for Toyota of Jefferson's infraction in failing to disclose the unreliability of the Tercel's odometer reading is three times $1,500.00 or $4,500.00.

■ Actual damages for the failure to furnish a disclosure statement for the BMW vehicle cannot be calculated on this basis. Determining actual mileage on a car with a non-functional odometer is impossible. Therefore, the statutory minimum of

$1,500.00 is the appropriate award. As mandated by § 1989(a)(2) of the Act, the defendant, Toyota of Jefferson, is also liable for the costs of the action and reasonable attorney's fees.

### The Redhibition Claim

■ Sales of goods in Louisiana carry an implied warranty that the goods are free of hidden defects ("redhibitory vices") and are reasonably fit for their intended use. La. Civ.Code Ann. art. 2520 (1952) provides for "the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he know of the vice". If a redhibitory vice exists, as the code article indicates, the buyer may demand rescission of the sale.

The facts adduced at trial indicate that the BMW had a plethora of latent defects which rendered it inconvenient, dangerous, and, shortly after purchase, impossible to use—in short, unfit for the purpose for which it was intended. Where a redhibitory defect appears soon after a thing is put into use, a reasonable inference arises in the absence of another explanation or a showing of intervening cause, that the defect existed at the time of the sale. *Rey v. Cuccia*, 298 So.2d 840, 843 (La.1974).

■ Besides rescission of the sale and return of the purchase price, Mr. Williams is entitled to his incidental expenses, including finance charges, cost of substitute transportation and cost of repairs and attempted repairs, according to *Davidson v. New Roads Motor Co., Inc.*, 385 So.2d 319, 322 (La.App. 1st Cir.), *writ denied*, 391 So.2d 454 (La.1980). As was noted above, the bill of sale introduced into evidence by the plaintiff at trial indicated that the purchase price of the vehicle was $3,565.51; repair bills also introduced into evidence amounted to $814.20. In addition, the plaintiff testified that he was paying 18% interest on an unsecured loan to purchase the car, a per diem rate of $2.16, from January 31, 1984 to the present. The defendant introduced no evidence to controvert this testimony. Thus, the plaintiff is entitled to this amount in finance charges.

■ Under La.Civ. Code art. 2545 (West Pamphlet 1987), if the seller knew of the defective nature of the product and concealed it from the buyer, he is considered to be in bad faith, and the law permits the buyer to recover damages and attorney's fees, in addition to the purchase price. To maintain a claim of bad faith, Mr. Williams was not required to prove that Toyota of Jefferson had actual knowledge of the BMW's defects. Constructive knowledge satisfied the requirements of art. 2545, and an extensive overhaul on a defective vehicle has been held to permit imputation of knowledge of its defects. *Lacey v. Baywood Truck and Machinery*, 381 So.2d 863, 866 (La.App. 1st Cir.1980), *aff'd sub nom., Capital Bank and Trust Co. v. Lacey*, 393 So.2d 668 (1981). Because such an overhaul was performed on the BMW by Toyota of Jefferson's affiliate, Toyota Westbank, the plaintiff is entitled to attorney's fees. He did not supply evidence at trial of damages other than those included in rescission of the sale under art. 2520 except for his testimony concerning his mental anguish, embarrassment, and humiliation at the car's behavior. Although the Court can well believe that he experienced these emotions, an action for redhibition based on a contract which is not for intellectual enjoyment does not permit recovery for non-pecuniary damages. *See, Long v. Panther Airboat Corp.*, 453 So.2d 304, 308 (La.App. 1st Cir.1984).

■ Toyota of Jefferson asserted that the plaintiff waived all warranties by signing a retail buyer's order containing disclaimer language. In order for such a disclaimer to have the legal effect of waiving the warranty against redhibitory vices, Louisiana law requires that it meet the following requirements:

(1) The waiver must be written in clear and unambiguous terms;

(2) The waiver must be contained in the sale document and the chattel mortgage document, if any;

(3) The waiver must either be brought to the attention of the buyer or explained to him.

*See, Tuttle v. Lowrey Chevrolet, Inc.,* 424 So.2d 1258, 1260 (La.App. 3rd Cir.1982); *Thibodeaux v. Meaux's Auto Sales, Inc.,* 364 So.2d 1370, 1371 (La.App. 3rd Cir.1978); *Hendricks v. Horseless Carriage, Inc.,* 332 So.2d 892, 894 (La.App.2d Cir.1976).

A waiver of the warranty against redhibitory vices must be "specific and unequivocal" in informing the purchaser that the vehicle is not fit for its intended purposes, according to *Stumpf v. Metairie Motor Sales, Inc.,* 212 So.2d 705, 710 (La.App. 4th Cir.1968). In that case, disclaimer language was deemed inadequate to waive the plaintiff's right to redhibition; it read: "It is agreed and understood that no warranties of any kind or character, either expressed, [sic] implied, are made by you of and concerning the car to be delivered to me, other than the manufacturer's warranties." *Id.* The language in the Toyota of Jefferson Retail Buyer's Order, which was introduced into evidence at trial, is a similar attempt at a blanket disclaimer: "It is my understanding that the year ____ Make BMW Model 2002 Serial No. 2363313 that I am purchasing is being sold to me at a discount price, and because of this I am responsible for any and all repairs at my own expense. No warranty is implied or intended." This disclaimer comes no closer than the one in *Stumpf* to a clear, unambiguous, specific and unequivocal waiver of the plaintiff's right to rescind the sale upon discovering that the car was unfit for its intended purpose.

This purported waiver did not appear on the sale document; the bill of sale bears the term "As Is", consistently held by Louisiana courts to be ineffectual to block redhibition:

> A sale made "as is" is not a waiver of all warranties. The vendor is not relieved of the implied warranty under LSA–CC 2520 that the thing must be fit for the use for which it is intended. The "as is" nomination, especially in a sale of a used

thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause.

*Sanders v. Sanders Tractor Co., Inc.,* 480 So.2d 913, 916 (La.App. 2d Cir.1985); *Cf. Nationwide Finance Co. of Gentilly, Inc. v. Jones,* 279 So.2d 221, 223 (La.App. 4th Cir.1973); *Donachrichia v. D'Antoni,* 270 So.2d 149, 153 (La.App. 1st Cir.1972); *Juneau v. Bob McKinnon Chevrolet Co.,* 260 So.2d 919, 922 (La.App. 4th Cir.1972).

In addition, based on the testimony at trial, the Court finds that the waiver language was not brought to Barry Williams' attention at the time of the transfer. Thus, if Toyota of Jefferson was attempting to secure a waiver of the warranty against redhibitory vices, it failed utterly. Not one of the requirements set forth in Louisiana jurisprudence for an effective waiver of this warranty was met.

■ Toyota of Jefferson also sought credit for the plaintiff's use of the vehicle. The plaintiff used the car for less than three weeks, and those weeks were characterized by extreme inconvenience. No set-off is due to the seller under these circumstances, according to the Louisiana Supreme Court's decision in *Alexander v. Burroughs Corp.,* 359 So.2d 607, 612 (La. 1978).

■ The plaintiff has also made a claim that the odometer infractions violated the Louisiana Unfair Trade Practices and Consumer Protection Law, La.Rev.Stat.Ann. 51:1401 et seq. (West Pamphlet 1987). The United States Court of Appeals for the Fifth Circuit has recognized that an odometer violation may constitute "an unfair or deceptive act in violation of a Louisiana law." *Boudreaux v. Puckett,* 611 F.2d 1028, 1032 (5th Cir.1980). However, the remedy provided under § 51:1408 of the law, "judgments against any party, as may be necessary to compensate any aggrieved person for any property, movable or immovable ... which may have been acquired from such person by means of any method

... declared unlawful" by the statute, would duplicate part of the award made to the plaintiff under the federal Act. That Act provides its own penalties; to make a double award to the plaintiff for the same conduct under another statute would amount to punitive damages beyond the scope of the Act.

■ Gulfport Auto Auction, Inc., was not at any time the transferor of the Toyota vehicle, but merely provided the means—an auction service—by which the transferor, Tim's, sold the vehicle to the transferee, Toyota of Jefferson. Thus, under Fed.R.Civ.P. 41(b), the claim of the plaintiff, Barry M. Williams, against Gulfport Auto Auction, Inc., is dismissed with prejudice.

■ Because the Court has found that Tim's Trading Post transferred the Toyota vehicle, not to Barry Williams, but to Toyota of Jefferson, the plaintiff has no claim against Tim's under the Act, which governs the relationship of a transferor and his transferee. Therefore, the plaintiff's claims against Gene H. Simmons, Inc., formerly Tim's Trading Post, Inc., are hereby dismissed under Fed.R.Civ.P. 41(a).

The plaintiff in this case is entitled to reasonable attorney's fees under both the federal Act and Louisiana redhibition article pertaining to bad-faith sellers. Mr. Williams' attorney has submitted a request and affidavit for compensation for 243.5 hours of work at $85.00 an hour, plus expenses of $1,618.09, for a total of $22,315.59. I find that many of the tasks detailed in the affidavit are of a routine nature, such as filing pleadings, travel time to New Orleans, and preparing, labelling, and indexing the bench book. Others, such as telephone calls to the State Attorney General's Office and to an investigator in the District Attorney's Office, appear unrelated to the civil case that was heard by this Court. The parties are directed to attempt to resolve this matter amicably and to report within twenty (20) days whether a stipulation as to attorney's fees and costs can be made, reserving all rights to contest entitlement to same on appeal.