(43 P.3d 891)

No. 87,502

JOSEPH G. BECKMAN, d/b/a B&B DRILLING, *Appellant*, v. KANSAS DEPARTMENT OF HUMAN RESOURCES and DAVID L. MILLER, *Appellees*.

Opinion filed April 12, 2002.

*David E. Watson*, of Hamilton, Gregg, Barker, Johnson & Watson, of Topeka, for appellant.

*John L. Yeary*, of the Kansas Department of Human Resources, of Topeka, for appellee KDHR.

Before ELLIOTT, P.J., GREEN, J., and PADDOCK, S.J.

GREEN, J.: Joseph Beckman, doing business as B&B Drilling, appeals from a judgment of the district court sustaining a Kansas Department of Human Resources (KDHR) hearing officer's decision, which had been approved by the Secretary of Human Resources. In sustaining the hearing officer's decision, the district court determined that Beckman's employee, David L. Miller, was entitled to the payment of unpaid wages, interest, and a penalty totaling $15,013.18 under the Kansas Payment of Compensation Act, K.S.A. 44-313 *et seq.*

On appeal, Beckman contends that Miller's claim based on an oral agreement for unpaid wages was legally unenforceable. In addition, Beckman maintains that Miller's claim for unpaid wages was barred by the statute of limitations. Finally, in the alternative, Beckman contends that the trial court erred in assessing a penalty

and awarding interest on Miller's claim for unpaid wages. We disagree and affirm.

Miller worked for Beckman as a general laborer helping drill water wells from November 1990 until October 1, 1995. Based upon their verbal agreement, Miller worked full time and was paid $6 per hour. Beckman paid Miller's wages once a month. They verbally agreed that any of Miller's wages in excess of $800 per month would be withheld and paid upon demand.

Miller was Beckman's only employee. Miller and Beckman usually worked together. When they ate together at a restaurant, Beckman paid for Miller's lunches. They had no agreement that the lunch was a cash advance against Miller's wages or that Miller would repay Beckman. As agreed, Beckman paid Miller $800 per month and withheld the remainder owed. The first time Miller asked for his accumulated withheld wages, he was paid without problems. Miller did not ask again and his excess wages accumulated for about 4 years.

When Beckman terminated Miller's employment in October 1995, Miller asked for his unpaid wages that had accumulated from August 1991 through October 1995, totaling $12,728. Beckman told Miller he disputed the amount owed, but not the hours Miller had worked. Beckman said he was going to deduct the cost of Miller's lunches. This was the first time Beckman told Miller that the cost of his lunches would be deducted from his pay.

Beckman sent payments to Miller from November 1995 through June 1996. Miller credited those payments against the wages due from August 1991 through July 1993 and part of the wages due for August 1993. Beckman still owed the balance for August 1993 and all of the wages from September 1993 through October 1995, totaling $6,958. Miller's computations were based on his records of hours worked and Beckman's payments. On August 21, 1996, Miller filed a claim for unpaid wages with KDHR.

Beckman claimed he had always intended to deduct the costs of Miller's lunches but never mentioned it to Miller before his termination. Beckman computed the lunch expenses by multiplying 880 days at $5 per day, or $4,400. Although Beckman did not have

records showing the hours Miller worked, he claimed Miller did not correctly document the time he had worked.

Beckman testified that he did not knowingly and willfully withhold wages. He maintained that he paid the amount he and Miller had agreed upon. Miller stated that he had agreed to the lesser amount because Beckman told him it did not matter if he disagreed and because Miller did not have any money.

The KDHR hearing officer found Beckman did not have Miller's written consent to withhold money from Miller's wages and ordered Beckman to pay Miller $6,958 for unpaid wages and $1,097.18 in interest. The hearing officer also concluded that Beckman's failure to pay was willful and assessed a 100% penalty, which brought the total amount assessed against Beckman to $15,013.18.

Upon review, the district court concluded that Miller's claim was within the 3-year statute of limitations. The district court rejected Beckman's argument that the oral agreement to withhold wages was unenforceable, stating that Beckman could not use his wrongful act to unjustly enrich himself. Finally, the district court concluded that the hearing officer did not abuse his discretion by awarding interest and a penalty.

"The standard of judicial review of an administrative agency action is defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*" *National Council on Compensation Ins. v. Todd*, 258 Kan. 535, 538, 905 P.2d 114 (1995). The court shall grant relief if it determines "the agency has erroneously interpreted or applied the law" or "the agency action is based on a factual determination, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole." K.S.A. 77-621(c)(4) and (7).

In reviewing a district court's review of an agency action, the appellate court must first determine whether the district court observed the requirements and restrictions placed upon it and then make the same review of the administrative agency's action as does the district court. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999).

*Oral Agreement*

Beckman first argues that his verbal agreement with Miller to withhold wages in excess of $800 per month violated K.S.A. 44-319(a) and that agreements which are contrary to law are unenforceable.

Every employer must pay all wages due to an employee at least monthly, on regular paydays. K.S.A. 44-314(a). An employer may not "withhold, deduct or divert any portion of an employee's wages unless . . . the employer has a signed authorization by the employee for deductions for a lawful purpose accruing to the benefit of the employee." K.S.A. 44-319(a)(3). "In determining the rights which accrue under an employment contract, the entitlement thereto or eligibility therefor, the contract controls so long as it is not unreasonable or illegal." *Sweet v. Stormont Vail Regional Medical Center*, 231 Kan. 604, 611, 647 P.2d 1274 (1982). Clearly, the oral agreements to withhold Miller's wages in excess of $800 per month were illegal under K.S.A. 44-314(a) and K.S.A. 44-319(a).

What Beckman fails to realize is that their oral agreement had two provisions: (1) that Miller would perform labor services for Beckman and in exchange Beckman would pay Miller $6 per hour; (2) that any wages Miller earned in excess of $800 per month would be withheld until Miller demanded payment. It is only the second provision which was unlawful and unenforceable. Neither KDHR nor the district court was enforcing the illegal provision. Rather, they were enforcing the first provision which was lawful. As a result, Beckman's argument fails.

*Statute of Limitations*

Next, Beckman contends that Miller cannot collect his unpaid wages because Miller should have demanded payment when legally due, that is, monthly, and, if so, the 3-year statute of limitations for verbal agreements bars part of Miller's claim and the award. He contends that because the hearing officer made no finding of fact concerning the amount of wages which accrued before August 1993, the case should be remanded to KDHR for such a finding and reduction of the award by that amount.

On the other hand, the KDHR argues that Miller demanded payment of his withheld wages in October 1995 and that is when the statute of limitations began to accrue. According to KDHR, the statute of limitations did not run because Miller filed his claim less than 1 year after his demand.

"A cause of action accrues when the right to institute and maintain a suit arises, or when there is a demand capable of present enforcement. [Citations omitted.]" *Holder v. Kansas Steel Built, Inc.*, 224 Kan. 406, 410, 582 P.2d 244 (1978). "There must be a right, a duty, and a default. [Citation omitted.]" 224 Kan. at 410.

An employer must pay all wages due to an employee at least monthly. K.S.A. 44-314(a). When an employee is discharged, the employer must pay the employee's earned wages not later than the next regular payday that the employee would have been paid if still employed. K.S.A. 44-315(a). Under these statutes, Miller's cause of action accrued when Beckman failed to pay Miller's earned wages on the regularly monthly payday. If Miller earned wages in August 1993 and the pay period was monthly, the latest date Miller's cause of action accrued for the August 1993 wages was August 31, 1996. Here, Miller filed his claim on August 21, 1996. Thus, he could be awarded wages for the period between August 21, 1993, and August 31, 1996, which would include the months after August 1993 until his termination in October 1995.

Miller told the hearing officer he understood he could only file a claim for unpaid wages for the 3-year period before filing his claim, or August 21, 1996. Miller explained that Beckman made payments from October 1995 through June 1996 towards the amount that Miller demanded at the time of his discharge. Miller stated the balance of his unpaid wages for August 1993 was $52. According to Miller, Beckman still owed that amount and all of the wages earned from September 1993 through October 1995, totaling $6,958. Thus, substantial competent evidence supports the hearing officer's award of $6,958 for unpaid wages, as that amount included only wages within the 3-year statute of limitations.

*Penalty*

Next, Beckman makes several arguments regarding the assessment of a penalty. First, he argues that the evidence does not

support the hearing officer's finding that he knowingly and willfully withheld Miller's wages. If so, he contends the penalty should not have been assessed.

A penalty is assessed only if "an employer willfully fails to pay an employee wages" as required by the wage statutes. K.S.A. 44-315(b). Both parties rely upon the definition of "willful," as used in K.S.A. 44-315(b), that was stated in *Holder*, 224 Kan. at 411.

In *Holder*, the court noted that whether an employer willfully failed to pay the earned wages is a question of fact to be determined by the trier of fact. 224 Kan. at 411. Our Supreme Court adopted the definition used by the trial court: " 'A willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another.' " 224 Kan. at 411. The court found the evidence supported the finding that the employer acted willfully because the gross profit figures previously used to figure an employee's commission had large deductions subtracted from it and the decision to subtract those unusual deductions was made unilaterally by the employer after the last discussion regarding unpaid wages with the employee. Morever, the employer also placed a release on the back of the check to forestall litigation in violation of K.S.A. 44-316(b). 224 Kan. at 411-12.

Beckman contends that Miller conceded that he agreed to have the costs of his lunches withheld from the accumulated wages that Beckman owed him. As a result, Beckman maintains that his acts were not "willful." Further, Beckman maintains that the hearing officer did not find his act indicated a design, purpose, or intent to wrong or cause injury to Miller. Beckman asserts that the hearing officer, instead of making the correct finding, created a presumption that Beckman knew the law about payment of wages and held Beckman did not rebut this presumption. Beckman contends that this rebuttable presumption violates the rule established in *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, 677 P.2d 1004 (1984).

In assessing the penalty, the hearing officer acknowledged his previous conclusion that Beckman's refusal to pay was contrary to law. The hearing officer continued, "The law presumes that [Beckman] knew the law with respect to payments of wages. Unrebutted,

that violation is indicative of [Beckman's] knowledge and intent. [Beckman's] evidence does not rebut that presumption."

Obviously, the hearing officer was referring to a well-known rule of law " 'that all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. See, 20 Am. Jur., Evidence, § 211, p. 208.' " *Hazlett v. Motor Vehicle Department,* 195 Kan. 439, 442, 407 P.2d 551 (1965). " '[A] person is presumed to know the law and that contracts are made in contemplation of existing law which becomes a part of the contract.' " *In re Estate of Fortney,* 5 Kan. App. 2d 14, 19, 611 P.2d 599, *rev. denied* 228 Kan. 806 (1980) (quoting *Shannep v. Strong,* 160 Kan. 206, 215, 160 P.2d 683 [1945]).

The hearing officer's statement that Beckman failed to "rebut the presumption" was nothing more than a finding that Beckman did not prove he had a written agreement authorizing Beckman to withhold part of Miller's earned wages or lunch costs. Or, stated another way, the hearing officer determined that Beckman had acted unlawfully. This finding alone, however, was insufficient to assess a penalty. There must be facts that show Beckman's act was willful.

In *Weinzirl,* the hearing officer 's decision merely stated: " 'The earned wages . . . were knowingly withheld from Claimant and this action was willful on the Respondent's part.' " 234 Kan. at 1022. The hearing officer concluded the wage agreement provision allowing earned commissions to be withheld as liquidated damages violated two wage payment statutes and an employer who knowingly and willfully entered into a contract that violates the statutes must pay a penalty. In applying the *Holder* definition of willful, the court held the district court was correct in reversing the hearing officer's decision because "the hearing officer did not find that [the employer] had a design, purpose or intent to willfully wrong or injure [the employee] when [the employer] failed to pay the disputed wages." 234 Kan. at 1023.

Unlike *Weinzirl,* the hearing officer in this case did not merely state that Beckman knowingly withheld the earned wages from Miller and that his action was willful. After stating that Beckman

had failed to "rebut the presumption," the hearing officer specifically recited facts that showed Beckman acted willfully:

"[T]he evidence supports the conclusion that [Beckman] knew of the obligation and willfully refused to pay, to-wit: [Beckman] did not mention the obligation before, during or after any one of the hundreds of lunches eaten together, until [Miller] asked for his wages. And [Beckman] kept no accounting of the dates or the amount expended to facilitate accurate reimbursement. These facts give rise to the obvious conclusion that the decision to withhold [Miller's] wages for lunches was an afterthought and an excuse not to pay, contrived later, with no relationship to a sincere belief by [Beckman] that the wages were rightfully withheld. [Beckman's] act was willful and knowing."

The language that Beckman's decision to withhold Miller's wages for lunch costs was "an afterthought and an excuse not to pay, contrived later with no relationship to a sincere belief . . . that the wages were rightfully withheld" is synonymous to language that Beckman had "a design, purpose or intent to willfully wrong or injure" Miller. As a result, Beckman's argument fails.

Beckman also contends that the finding that he did not keep an accounting of the lunches is erroneous because (1) it overlooks copies of his cancelled checks for Miller's lunches, (2) it disregards his testimony concerning his intent, and (3) it fails to acknowledge that the parties had a very informal employment relationship.

At the hearing, Beckman specifically testified he calculated the amount of Miller's lunch costs by estimating the number of days he paid for Miller's lunches and then multiplying those days by $5. When he filed his request for review with the Secretary of Human Resources, Beckman attached his computation of the hours Miller worked and copies of his canceled checks. The Secretary found that Beckman had ample opportunity to present his evidence to the hearing officer regarding the claim, including rebuttal evidence, but failed to do so. The Secretary concluded that the hearing officer decided the case on the basis of the evidence presented at the hearing and affirmed his decision. Beckman does not allege that the hearing officer prevented him from presenting this evidence at the hearing. As a result, Beckman's argument fails.

Next, Beckman explained that he withheld Miller's lunch expenses until Miller was terminated because that was the method

he had used for his previous employee and it was "just logic to me." Although Beckman may have testified about his intent, his conduct showed his intent. The hearing officer relied upon Beckman's conduct, not his words, to determine intent. An appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *Garvey Elevators, Inc. v. Kansas Human Rights Comm'n*, 265 Kan. 484, 496, 961 P.2d 696 (1998).

Next, Beckman argues that the penalty was erroneously assessed because the hearing officer determined that Miller demanded payment of his earned wages when he was terminated in October 1995. Beckman contends that Miller first demanded his unpaid wages when he filed his claim with KDHR, or August 21, 1996. If the latter date is used, according to Beckman, no authority existed to assess a penalty because he "appealed [Miller's] demand within 8 days of its receipt; [*sic*] pursuant to K.S.A. 44-315."

An employer must pay the employee's wages at least monthly. K.S.A. 44-314(a). The employer must pay the employee's earned wages not later than the next regular payday if the employee is discharged. K.S.A. 44-315(a). If an employer willfully fails to pay the employee's wages under K.S.A. 44-314 or K.S.A. 44-315(a), the employer is liable for the wages due and a penalty "in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which *such failure continues after the eighth day after the day upon which payment is required* or in an amount equal to 100% of the unpaid wages, whichever is less." (Emphasis added.) K.S.A. 44-315(b).

First, Beckman misconstrues the italicized portion of the statute. It does not state the 8th day after receipt of the employee's claim. Rather, it references the date that *payment was required* under K.S.A. 44-314 or K.S.A. 44-315(a). Or, stated another way, if the employer fails to pay an employee wages within 8 days after the employee's wages are due under the wage statute when the employee is discharged or resigns, a fixed amount based upon 1% of the unpaid wages can be assessed daily. Second, the italicized portion of the statute does not apply to Beckman because his penalty was not computed on a daily penalty fixed upon 1% of Miller's

unpaid wages. His penalty was assessed on "an amount equal to 100% of the unpaid wages." As a result, this argument fails.

*Interest and Penalty*

Finally, Beckman contends the hearing officer did not have authority to assess both interest and a penalty. He relies upon *Weinzirl*.

K.S.A. 44-323(a) provides that the hearing officer has discretion to assess interest, as provided under K.S.A. 16-201, on unpaid wage claims from the date the wages were due as defined under K.S.A. 44-314.

In *Weinzirl*, the hearing officer awarded the employee unpaid wages and a penalty against the employer, but not interest. The employer appealed to the district court which upheld the award of wages but reversed on the penalty and refused to award prejudgment interest that the employee claimed for the first time in district court. The district court stated this was not an appropriate case in which to award interest. Both parties appealed.

The court noted that the Kansas Wage Payment Act contained no provision authorizing interest in addition to the statutory penalty until 1983. In 1983, K.S.A. 44-323(a) was amended to authorize the assessment of interest. 234 Kan. at 1023. The court held that after "the 1983 amendment, the awarding of interest is discretionary and may be assessed on the wage claim found due and owing from the date wages were due. The district court's refusal to award interest was proper." 234 Kan. at 1023. Although the court concluded that the district court's refusal to award interest was proper, it did not preclude the awarding of interest and a penalty after the 1983 amendment to K.S.A. 44-323(a).

Here, the hearing officer did not err by awarding both interest and a penalty.

Affirmed.