# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-4106

_____

Roger Smith,                                  *
                                              *
            Appellee,                         *
                                              *
    v.                                        *
                                              *
Chase Group, Inc.; Chase Associates,          *
Inc.,                                         *
                                              *
            Appellants.                       *

_____                         Appeals from the United States
                                    District Court for the
No. 03-1007                         Western District of Missouri.

_____

Roger Smith,                                  *
                                              *
            Appellant,                        *
                                              *
    v.                                        *
                                              *
Chase Group, Inc.; Chase Associates,          *
Inc.; Karen Allison; J. Kenneth               *
Allison, Jr.,                                 *
                                              *
            Appellees.                        *

_____

Submitted: September 11, 2003

Filed: January 12, 2004
_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.
_____

BYE, Circuit Judge.

Chase Associates, Inc., appeals the district court's denials of its motions for judgment as a matter of law (JAML) and new trial following a jury verdict in favor of Roger Smith on his breach of contract claim. Smith appeals the district court's grant of JAML reversing the jury's finding the breach was willful. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I

This case arises out of an at-will employment agreement entered into between Chase Associates and Smith. Viewed in the light most favorable to the verdict, Keenan v. Computer Assocs. Int'l, 13 F.3d 1266, 1268 (8th Cir. 1994), the record reveals the following facts. Chase Associates provides executive search services on a contingency basis for clients in the pharmaceutical and biotechnology industries. The company is owned by Ken and Karen Allison who also own a related executive search firm, Chase Group, Inc., which specializes in retained searches. Under a contingency arrangement, Chase Associates earns a fee if a suitable candidate is located and hired. Under a retainer arrangement, Chase Group earns a fee irrespective of whether a candidate is hired. Ken manages Chase Associates and

Chase Group, while Karen works primarily as an executive recruiter for Chase Group.[1]

Chase Associates hired Smith in April 1999 as a recruiter. Smith's job included locating individuals who were seeking employment, and cultivating corporate clients who were seeking employees. Smith and Chase Associates agreed Smith would be paid a commission based on his production. The parties agreed to the compensation policy in oral negotiations and Chase Associates included it in an employee handbook provided to Smith at the beginning of his employment.

The compensation policy provided Smith would be paid a commission on contingency searches if he placed one of his candidates with a corporate client or if one of his corporate clients hired a candidate. If Smith placed one of his individual candidates with one of his corporate clients he would be paid a commission on both ends of the transaction.

Similarly, on retained searches, Smith would be paid 100% of the commission if his corporate client retained Chase Group and Smith conducted the recruitment search. The commission would be split 50/50 if one of Smith's corporate clients retained Chase Group but another recruiter conducted the search. In the event Smith's corporate client retained Chase Group and another recruiter involved yet a third recruiter, Smith would be paid 50% of the commission and the other recruiters would share equally in the remaining 50%. Finally, if a house client (defined as an account or candidate belonging to Ken or Karen) retained Chase Group and Smith performed the recruitment efforts, he would receive 50% of the commission and "the house" would be paid 50%. The evidence showed it was common for recruiters to

_____

[1]Smith sued both Chase Associates and Chase Group but the district court declined to list Chase Group separately on the verdict form. Thus, only Chase Associates has appealed the verdict.

work together on searches and to split commissions. The evidence also showed recruiters often agreed to different divisions of the commissions.

The difficulties between Smith and Chase Associates giving rise to this litigation had their genesis in several contracts for retained searches entered into between Chase Group and a biotechnology company named Vitex. Vitex contacted Chase Associates in the summer of 2000 and became one of Smith's corporate clients. From the outset, Ken encouraged Smith to involve Karen in Vitex matters because of her extensive experience. Ken and Karen assured Smith Karen's involvement would not affect his ownership of the Vitex account or his commissions. Vitex initially hired Chase Associates to conduct various contingency searches. Smith performed the searches but was unable to provide a candidate Vitex found suitable. Later, after a conference call between Vitex representatives, Smith and Karen, Vitex hired Chase Group to conduct a retained search. Shortly thereafter, Karen traveled to Vitex's Boston offices to meet with company officials and returned with a second retained search request. Karen refused Smith's request to accompany her to Boston. After the Boston trip, all of Vitex's contacts with Chase Group were handled by Karen, and in the ensuing eight months Chase Group entered into five more contracts with Vitex for retained searches. Karen conducted the recruitment efforts for each of the Vitex contracts or assigned them to recruiters other than Smith. Karen also chose not to inform Smith about some of the subsequent contracts entered into with Vitex. During this same time, Karen, accompanied by Ken, flew to New York for a second meeting with Vitex officials. Once again, Smith was not permitted to attend the meeting.

Chase Associates concedes Vitex was initially Smith's client. Additionally, the evidence shows Ken and Karen repeatedly promised Smith Vitex would remain his client as long as searches for Vitex were ongoing. Chase Associates, however, contends Vitex became dissatisfied with Smith and requested Karen handle the retained searches. A Vitex representative testified she gave no thought to having

Smith conduct the retained searches and specifically asked Karen to conduct the recruitment efforts. Conversely, Smith testified Karen and Ken intentionally undermined his relationship with Vitex and froze him out of all Vitex dealings in order to take over the lucrative account.

Vitex entered into a total of seven retainer agreements with Chase Group and paid approximately $353,864 in fees. Smith was paid commissions on the first two contracts in accordance with the compensation policy. Those contracts are not at issue in this litigation. Smith was paid modified split-commissions on the next three contracts and no commissions on the final two. Smith contends he accepted modified payments on three of the contracts only because Chase Associates refused to pay him according to the compensation policy and he feared termination if he complained. Smith contends he would have earned 100% commissions on the last five of the seven retained searches had he been allowed to conduct the searches himself.

In April 2001, Smith left Chase Associates and brought suit alleging it breached the employment contract by refusing to pay commissions on five of the seven contracts in accordance with the compensation policy. At trial, Smith presented evidence indicating he was Chase Associates's third highest producer and would have earned an additional $63,627 in commissions had he been allowed to conduct the recruitment efforts on the five disputed contracts. Smith also argued Chase Associates's refusal to pay the commissions was willful and in violation of Kan. Stat. Ann. § 44-315[2], thereby subjecting the company to a 100% statutory penalty on the withheld commissions. The jury awarded $51,528 on the breach of contract claim and found the non-payment of commissions willful. The district court denied Chase Associates's motions for JAML and new trial, but granted JAML as to the jury's finding of willfulness. These appeals followed.

---

[2]The parties agree Kansas law controls our inquiry.

-5-

On appeal, Chase Associates argues the district court erred in denying its motions for JAML and new trial. Chase Associates contends it was not bound by the compensation policy because its employee handbook contained a disclaimer indicating it did not represent contractual terms of employment. Further, even assuming the compensation policy applied to some of the contracts, it did not apply to the last five contracts because, as evidenced by the dispute over commissions, there had been no "meeting of the minds" between Chase Associates and Smith as to payment of those commissions. Chase Associates also argues the compensation policy required the payment of commissions only if the recruiter was employed by Chase Associates at the time a placement was made. Because Smith resigned before work was completed on the last two contracts, Chase Associates argues it was not required to pay Smith any commissions.

Chase Associates next contends recruiters frequently agreed to deviate from the compensation policy and Smith agreed to a modified split on two of the three contracts. He also agreed to have a dispute over the third contract decided by an in-house panel of four co-employees; three of whom were selected by Karen. Finally, Chase Associates argues the district court abused its discretion by refusing to grant a new trial based on instructional error and insufficiency of the damages evidence. In his appeal, Smith argues the district court erred in concluding there was insufficient evidence to support the jury's finding of willfulness.

II

A.    Chase Associates - JAML Motion

We review the district court's denial of a motion for JAML de novo using the same standard as the district court. Keenan, 13 F.3d at 1268. A motion for JAML presents a legal question to the district court and to us on appeal: "[W]hether there is sufficient evidence to support the jury's verdict." White v. Pence, 961 F.2d 776, 779

(8th Cir. 1992). We view the "evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility." Keenan, 13 F.3d at 1268. The legal standard requires 1) all direct factual conflicts must be resolved in favor of the plaintiff, 2) all facts in support of the plaintiff that the evidence tended to prove must be assumed, and 3) the plaintiff must be given the benefit of all reasonable inferences. Hopson v. Fredericksen, 961 F.2d 1374, 1379 (8th Cir. 1992). A grant of JAML is proper only if the evidence viewed according to this standard would not permit "reasonable jurors to differ as to the conclusions that could be drawn." Dace v. ACF Indus., Inc., 722 F.2d 374, 375 (8th Cir. 1983).

Chase Associates first argues it is not bound by the compensation policy set forth in the employee handbook because the handbook contains an express disclaimer indicating it does not represent contractual terms of employment. Second, Chase Associates contends there was never a meeting of the minds between it and Smith regarding his compensation, and thus no enforceable contract existed. We consider and reject each of these arguments in turn.

First, Chase Associates's reliance on Kansas law holding employee handbooks do not transform employment-at-will relationships into implied-in-fact contracts of employment is misplaced. Smith does not contend he was anything but an at-will employee. Accordingly, it is not necessary to prove the existence of an implied-in-fact employment contract. Rather, Smith contends he and Chase Associates agreed to a compensation policy which Chase Associates later ignored, thereby breaching the contract of employment. See Randall v. Bd. of Pub. Utils., 983 F. Supp. 1008, 1017 (D. Kan. 1997) ("Kansas law leaves no doubt that the employment at will relationship is a contractual one.") (citing Dickens v. Snodgrass, Dunlap, & Co., 872 P.2d 252, 260 (Kan. 1994)). We conclude the existence of a binding compensation agreement is unrelated to language in the handbook disclaiming an implied-in-fact contract of employment. The oral negotiations, confirmed in the written description

-7-

of the compensation plan contained in the handbook, are sufficient to show Smith and Chase Associates entered into a binding contract regarding compensation. See Lessley v. Hardage, 727 P.2d 440, 448 (Kan. 1986) (holding an oral contract for compensation between employer and at-will employee sufficiently definite and certain to create an obligation on behalf of employer).

Chase Associates next argues the parties never arrived at a meeting of the minds as to compensation and thus no enforceable contract existed. In support of its argument, Chase Associates points to evidence showing Smith periodically agreed to modifications of the compensation policy. Chase Associates further argues the disputes over compensation demonstrate a lack of mutual intent to follow the compensation policy.

Basic principles of contract law persuade us to the contrary. An agreement to vary the terms of a contract on one or more occasions standing alone does not result in a waiver of contractual terms. Waiver is an intentional relinquishment of a known right, Iola State Bank v. Biggs, 662 P.2d 563, 571 (Kan. 1983), and may be inferred from a party's conduct. We are satisfied, however, there was sufficient evidence to show Smith did not intend to waive his right to compensation under the compensation policy by occasionally agreeing to deviations. We are also satisfied Smith's reluctant agreement to participate in the in-house peer review process was not an intentional relinquishment of his right to compensation under the terms of the compensation policy.

Similarly, we reject out of hand Chase Associates's tautology which suggests the present dispute proves the parties never intended to contract. Contract disputes often revolve around disagreements over contractual terms. It would be absurd to allow a breaching party to use a dispute, occasioned by his breach, to avoid his contractual obligations. We conclude the terms of the compensation policy were sufficiently definite and certain to create an obligation on behalf of Chase Associates

and its subsequent unwillingness to abide by the contract does not prove the promise was never made.

Chase Associates next argues the district court should have granted JAML because there was insufficient evidence to support the jury's award of damages. Specifically, Chase Associates argues Smith was not involved in any of the five contested searches, and given Vitex's dissatisfaction with Smith, there is no evidence Vitex would have continued to retain Chase Group if Smith had remained involved. Finally, Chase Associates argues Smith left its employment before the final two searches were completed and under the compensation policy Smith forfeited any right to commissions on those searches. Once again, we consider and reject each of these arguments in turn.

It is undisputed Smith was not involved in any of the last five searches. It is also true Vitex asked Karen to conduct several of its searches. Smith, however, presented evidence showing he was a capable recruiter and had brought in the Vitex account. Indeed, after working with Smith on various contingency searches, Vitex hired Chase Group to conduct several retained searches. Despite Smith's abilities, Karen and Ken did nothing to advance Smith's developing relationship with Vitex. Indeed, it is apparent their actions impeded Smith's ability to develop the account. At first, Ken and Karen promised Smith Vitex would remain his client. Later, however, Karen twice traveled to meet with Vitex representatives and twice excluded Smith; selecting Ken to accompany her on one occasion. Near the end of his employment with Chase Associates, Karen began keeping the existence of new contracts from Smith. Viewing this evidence in the light most favorable to the verdict, we conclude there was sufficient evidence to permit "reasonable jurors to differ as to the conclusions that could be drawn." Dace, 722 F.2d at 375.

Chase Associates's claim that Smith cannot recover under the compensation policy because the agreement required him to be employed by Chase Associates at the

time the searches were concluded is also unavailing. A party may not enforce the provisions of a contract if it first breached the agreement. See Youell v. Grimes, 217 F. Supp. 2d 1167, 1175 (D. Kan. 2002) (recognizing under Kansas law that an insurer who wrongfully breaches an insurance contract may not defend by asserting the insured also later breached the contract); Alexander & Alexander, Inc. v. Feldman, 913 F. Supp. 1495, 1501 (D. Kan. 1996) (noting under Missouri law a plaintiff cannot recover for a defendant's violation of a non-compete clause in an employment contract unless he proves the defendant was first to breach). Accordingly, Smith's decision to leave the company prior to completion of the searches is of no consequence.

B.     Chase Associates - New Trial Motion

Chase Associates next argues the district court abused its discretion by denying its new trial motion premised on instructional error and insufficiency of the evidence.

We review for abuse of discretion the district court's denial of a motion for a new trial. Keenan, 13 F.3d at 1269. When reviewing a district court's decision to deny a motion for new trial, "we give great deference to its judgment, because the district court has the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." Bonner v. ISP Techs., Inc., 259 F.3d 924, 932 (8th Cir. 2001) (citation omitted).

Chase Associates first argues the district court should have instructed the jury to make individualized damage awards as to each of the contested contracts. Instead, the district court instructed the jury to award a single aggregate amount.

We review a district court's decisions concerning jury instructions for an abuse of discretion. See, e.g., B & B Hardware, Inc. v. Hargis Indus., 252 F.3d 1010, 1012-13 (8th Cir. 2001). In diversity cases the instructions must fairly and adequately

-10-

represent the law of the forum state. Ford v. GACS, Inc., 265 F.3d 670, 679 (8th Cir. 2001). The trial court is required to properly instruct the jury on a party's theory of the case but errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002). Where the instructions fairly instruct the jury on the law, error in an isolated instruction may be disregarded as harmless if the instructions are substantially correct and the jury could not reasonably have been misled. Ford, 265 F.3d at 679.

The district court instructed the jury to "award the plaintiff such sum as you believe will fairly and justly compensate the plaintiff for the damages you believe he sustained as a direct result of the breach of contract by defendant." Appellant's Brief at 51. Chase Associates does not argue this is an incorrect statement of Kansas law. Rather, Chase Associates contends the jury should have been given an additional instruction setting forth an itemized list of the amounts claimed in connection with each of the disputed contracts. According to Chase Associates, the failure to provide such a list prevented the jury from properly focusing on the damages. We disagree. Smith argued he could have earned full commissions on each of the five disputed contracts and offered evidence to establish the amount of each claimed deficiency. The claims and evidence in support thereof were not complicated, and nothing in Chase Associates's arguments convinces us the jury was unable to or failed to consider each of the contracts separately and award damages accordingly. Indeed, the jury awarded over $12,000 less than Smith requested indicating it considered and rejected some of Smith's claimed losses. See Phillips v. Collings, 256 F.3d 843, 851-52 (8th Cir. 2001) (affirming the district court's instructions to the jury because no prejudice resulted from the refusal to provide more detailed instructions). Accordingly, we find no error in the instructions to the jury.

We also reject Chase Associates's arguments regarding sufficiency of the evidence. When "the basis of the motion for a new trial is that the jury's verdict is

against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal quotation omitted). As we have already discussed, the evidence was sufficient to support the jury's verdict and the district court did not abuse its discretion by denying the motion for new trial.

C.    Smith - JAML Motion

Smith contends the district court erred in granting JAML and reversing the jury's finding that Chase Associates's refusal to pay commissions was willful. We agree.

Kansas law imposes a penalty on employers who "willfully fail[] to pay an employee wages" as required by the state's wage statutes. Kan. Stat. Ann. § 44-315(b). "A willful act is one indicating a design, purpose, or intent on the part of a person to do wrong or to cause an injury to another." Beckman v. Kansas Dep't of Human Resources, 43 P.3d 891, 896 (Kan. Ct. App. 2002) (quoting Holder v. Kansas Steel Built, Inc., 582 P.2d 244, 249 (Kan. 1978)). An employer's willful refusal to pay wages may be divined from the employer's conduct. Beckman, 43 P.3d at 897 (holding employer acted willfully because the reason given for withholding wages was "an afterthought and an excuse not to pay, contrived . . . with no relationship to a sincere belief . . . that the wages were rightfully withheld"). The issue of willfulness is a question of fact to be determined by the jury. Id.

Vitex was Smith's account but Ken encouraged Smith to involve Karen in Vitex dealings. Thereafter, Ken and Karen repeatedly promised Smith Vitex would remain his account as long as searches were ongoing. Despite those assurances, however, Karen quickly took over the account. Within weeks she flew to Boston for a face-to-face meeting with Vitex and refused Smith's request to accompany her. Later, without informing Smith, Karen made a second trip and took Ken. When

Karen needed help with the Vitex account she solicited the assistance of recruiters other than Smith. She also chose not to inform Smith about some of the contracts entered into between Chase Group and Vitex. We believe, when viewed in the light most favorable to the verdict, this evidence is sufficient to sustain the jury's finding that Chase Associates acted with a design, purpose, or intent to deprive Smith of his commissions.

## III

Accordingly, we reverse the district court's grant of JAML, reinstate the jury's finding of willful failure to pay wages and remand with instructions to determine the appropriate penalty in accordance with Kan. Stat. Ann. § 44-315. The order and judgment of the district court are in all other respects affirmed.

_____