# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2809

_____

Farmers Cooperative Co.,       *
      *
     Plaintiff - Appellee,       *
      *    Appeal from the United States
     v.       *    District Court for the
      *    District of North Dakota.
Senske & Son Transfer Co.;       *
Jimco Enterprises, LLC,       *
      *
     Defendants - Appellants.       *

_____

Submitted: May 14, 2009
Filed: July 13, 2009 (Corrected August 13, 2009)

_____

Before LOKEN, Chief Judge, EBEL[1] and CLEVENGER,[2] Circuit Judges.

_____

CLEVENGER, Circuit Judge.

## BACKGROUND

Farmers Cooperative Company (FCC) is an Iowa agricultural cooperative that buys and sells grain, feed, fuel and crop inputs. Senske & Son Transfer Company and Jimco Enterprises (together, Senske) are North Dakota companies located in Grand Forks, North Dakota. Among other things, Senske runs a used

_____

[1]The Honorable David M. Ebel, United States Circuit Judge for the Court of Appeals for the Tenth Circuit, sitting by designation.

[2]The Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Court of Appeals for the Federal Circuit, sitting by designation.

truck business. Senske purchased two 1998 International Harvester F9100 semitruck tractors (trucks) from Ruan Truck Sales (Ruan), and then resold the trucks to FCC. We refer to the two trucks by the last three digits of their vehicle identification numbers. In April 2005, FCC paid Senske $20,000 for Truck 837. At that point, the truck's odometer showed approximately 480,000 miles. FCC apparently had a positive experience with Truck 837 and decided to pursue purchasing another truck from Senske. Eight months after purchasing the first truck, FCC bought Truck 834 for $19,000. At the time of purchase, Truck 834's odometer showed about 528,000 miles.

FCC manager Bryan Korynta and another FCC employee drove to Senske's Grand Forks facility to pick up Truck 834 on December 12, 2005. Mr. Korynta planned to drive the truck to Sioux Falls, South Dakota, to have it outfitted to carry a petroleum tank. On the way to Sioux Falls, Mr. Korynta noticed that the odometer had stopped working. Mr. Korynta called Senske's sales representative, Mr. Grinde, and reported the problem. Mr. Grinde assured Mr. Korynta that he would personally come out and replace the odometer.

FCC received Truck 834 from the Sioux Falls facility in late January 2006. The day after it arrived, an FCC employee found a "next service" sticker under the driver's seat indicating that the truck was scheduled for its next service at 738,431 miles. According to FCC manager Bryan Korynta, Truck 834 also began leaking and burning excessive amounts of oil within days of placing it into service.

Now suspicious about the mileage, Mr. Korynta had the truck's Electronic Control Module—a system that stores the actual mileage driven—tested. The Electronic Control Module (ECM) test showed that Truck 834 had about 200,000 more miles than what its odometer showed. Mr. Korynta testified that he called Mr. Grinde to confront him about the ECM test results. According to Mr. Korynta, Mr. Grinde offered him a thousand dollars "to keep his mouth shut," but Mr. Korynta refused. FCC then had the other truck, Truck 837, tested. Truck 837's ECM test showed that its odometer was also about 200,000 miles behind.

FCC contacted its attorney who sent Senske a letter noting demanding a refund for both trucks. In response, Senske's President, James Senske, sent a letter in which he did not deny FCC's accusations of odometer tampering, but stated that Senske did not guaranty mileage and therefore would not accept return of the trucks.

FCC continued to use Truck 837 without incident. Truck 834, on the other hand, was burning and leaking excessive amounts of oil. However, according to FCC, a shortage of replacement trucks forced it to continue using truck 834 for ten months, despite its problems. When FCC did take the truck to be serviced, it learned that the truck's engine and transmission needed replacing. FCC had the engine and transmission work done at total cost of $28,071.17.

FCC eventually brought suit under the Federal Odometer Act, 49 U.S.C. §§ 32701, et seq. Section 32703 provides that a person may not "disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered on the odometer." Section 32710(a) imposes liability of "3 times the actual damages or $ 1,500, whichever is greater" on those who intentionally tamper with a vehicle's odometer with an intent to defraud. In addition, section 32710(b) provides that "[t]he court shall award costs and a reasonable attorney's fee" to plaintiffs when judgment is entered in their favor. FCC requested trial by jury.

Senske filed a third-party complaint against Ruan, the party from whom it had bought the trucks. On summary judgment, the district court dismissed Senske's claims. The court found that the allegations against Ruan amounted to nothing more than "pure speculation unsupported by the record." Farmers Coop. Co. v. Senske & Son Transfer Co., No. 2:06-CV-32, 2008 WL 686266, at *4 (D.N.D. Mar. 7, 2008).

After a three-day trial in April 2008, a jury found that Senske had changed the mileage on the odometers with an intent to defraud. The jury concluded that

FCC was entitled to $42,370.47 in damages attributable Senske's fraudulent conduct. Pursuant to § 32710(a), the district court trebled the damages. The court next added $6,145.54 in prejudgment interest and amended the damages to also include $10,845.20 in stipulated costs and $100,898.90 for FCC's attorney's fees. This brought FCC's total judgment to $245,001.05

On April 23, 2008, Senske filed a motion for a new trial. The district court[3] denied the motions based on its conclusions that the verdict was supported by substantial evidence and that Senske had failed to present any argument to warrant a new trial. Farmers Coop. Co. v. Senske & Son Transfer Co., No. 2:06-CV-32, 2008 WL 2705098, at *3–*6 (D.N.D. July 9, 2008). Senske timely appealed to this court. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## ANALYSIS

On appeal, Senske argues that the damages awarded by the jury are not supported by the evidence, that the district court abused its discretion by refusing to bifurcate damages from liability, and that the jury instructions and verdict form were insufficient. Senske also argues that the district court erred in denying its multiple requests to delay the trial and in conducting the trial in a manner detrimental to Senske. Last, Senske challenges the district court's award of attorney's fees and prejudgment interest. We affirm the judgment in its entirety.

## A

The jury found Senske liable for odometer fraud and determined that FCC's actual damages were $42,370.47. The jury's verdict form indicated $36,420.82 in damages for Truck 834 and $5,949.65 in damages for Truck 837. As it did in a post-trial motion before the district court, Senske asserts on appeal that it is entitled to a new trial because the record evidence does not support the jury's damages

---

[3]The Honorable Rodney S. Webb United States District Judge for the District of North Dakota.

verdict. We will only reverse a district court's denial of a motion for a new trial based on the sufficiency of evidence for a clear abuse of discretion. Morgan v. City of Marmaduke, Ark., 958 F.2d 207, 210-211 (8th Cir. 1992).

Senske's objection is twofold. First, Senske takes issue with the jury's allotment for Truck 834 because it includes both the difference between FCC's purchase price and the truck's actual mileage fair market value (FMV), as well as expenses associated with the repairs. Senske argues that this amounts to improper double collection on FCC's actual damages. According to Senske, the difference between the FMV and the sales price fully compensated FCC for Truck 834's worn out engine and transmission. Second, Senske also challenges the jury's verdict, charging that FCC failed to show the causal connection between the odometer tampering and the needed repairs.

We reject Senske's argument that FCC has been unjustly enriched by collecting both its repair costs and the difference between the price FCC paid for Truck 834 and the FMV given the truck's actual milage. Under § 32710(a), "actual damages" include (1) the purchase price of the vehicle less its FMV given the vehicle's actual mileage, and (2) any expenses shown to be attributable to the defendant's wrongful acts. See Duval v. Midwest Auto City, Inc., 425 F.Supp. 1381, 1388 (D. Neb. 1977) (defining "actual damages" under the odometer fraud statute to be the meaning commonly applied to fraud cases, i.e. the difference between the amount plaintiff paid and the fair market retail value of the vehicle with number of miles actually traveled, plus such outlays as are legitimately attributable to acts of the defendant, but finding that plaintiff had not shown any expenses attributable to the odometer tampering beyond the FMV price difference), affd. 578 F.2d 721 (8th Cir. 1978); Oettinger v. Lakeview Motors, Inc., 675 F.Supp. 1488, 1496 (E.D. Va. 1988) (same); Williams v. Toyota of Jefferson, Inc., 655 F. Supp. 1081, 1085 (E.D. La. 1987) (same); Beachy v. Eagle Motors, Inc., 637 F.Supp. 1093, 1095-96 (N.D. Ind. 1986) (same); Gonzales v. Van's Chevrolet, Inc., 498 F. Supp. 1102, 1103 (D. Del. 1980) (same). The district court

did not err when it permitted FCC to recover, in addition to the price difference attributable to the fraud, the repair costs that the jury found were proximately caused by Senske's misconduct.

We also conclude that FCC presented the jury with substantial evidence that the $36,420.82 in damages for Truck 834 were attributable to Senske's wrongful acts. FCC's expert, Mr. Swanson, testified that he was "very confident" that if the mileage shown on Truck 834's odometer had been accurate, it would not have needed a new engine. In addition, FCC's mechanic, Mr. Brownmiller, testified that it would be "out of the ordinary" for Truck 834 to need a new transmission if the truck's actual mileage had been what its odometer indicated. This is sufficient evidence for a jury to attribute the $28,071.17 bill for replacing Truck 834's engine and transmission to Senske's wrongful conduct. We also find it entirely reasonable that the jury rejected Senske's argument that an intervening circumstance, i.e., FCC's ten months of use before the repairs, was the principal cause behind the truck's engine and transmission problems. Mr. Korynta's testimony and the letter from FCC's attorney both indicate that Truck 834's oil problems—the apparent catalyst that led FCC to take the truck in for repairs—were present within days after FCC put the truck into service.

In addition to the $28,071.17 in repairs, FCC's expert, Mr. Swanson testified that given the discrepancy in mileage, Truck 834's FMV was $8,200 less than the $19,000 that FCC paid for the truck, and Truck 837 was worth $5800 less than the $20,000 FCC paid for that truck. Although Senske complains on appeal about the methodology Mr. Swanson used to arrive at his FMV differentials, the jury heard from both sides on the FMV issue and was free to accept Mr. Swanson's calculations. After adding the undisputed $149.65 expense for each truck's ECM test, the jury had sufficient evidence to award FCC $36,420.82 in actual damages for Truck 834 and $5,949.65 in actual damages for Truck 837.

-6-

B

Senske next alleges that the district court erred by refusing to bifurcate the issues of damages and liability. The decision to separate or bifurcate a trial is committed to the sound discretion of the trial court and we will only overturn the court's decision for an abuse of discretion. Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 541 (8th Cir. 1997).

When determining whether bifurcation is appropriate, "district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1201–02 (8th Cir. 1990). In this case, none of these considerations warranted bifurcating liability and damages. This was a relatively simple case involving only one claim and one defendant. The trial took just three days to complete, and the jury needed less than a half-day's deliberation to reach its verdict. We see no reason why the court should have separated the liability and damages issues.

C

Senske also alleges that the district court erred by issuing insufficient jury instructions and an improper verdict form. "We review a district court's decisions concerning jury instructions for an abuse of discretion." Smith v. Chase Group, Inc., 354 F.3d 801, 808 (8th Cir. 2004). Senske alleges error in the district court's refusal to break down the damages into repair costs and costs associated with the difference between FMV and the sales price. Senske fails, however, to articulate any prejudice from this alleged error. See Phillips v. Collings, 256 F.3d 843, 851-52 (8th Cir. 2001) (affirming the district court's instructions to the jury because no prejudice resulted from the refusal to provide more detailed instructions). Indeed, our precedent explicitly condones jury instructions with aggregated damages. See Smith, 354 F.3d at 808–09 (rejecting defendant's argument that the district court should have instructed the jury to make individualized damage awards instead of a single aggregate amount.)

-7-

Beyond its request for element-by-element damages, Senske also reiterates that the jury instructions facilitated FCC's unjust enrichment with alleged double compensation for the repairs and for the difference between the sale price and the FMV. We have already rejected this argument. In sum, we find no error in the district court's verdict form or in the jury instructions.

D

Senske next alleges that the district court erred in denying several of its requests to push back the trial date. We review the district court's denial of a motion for continuance for an abuse of discretion. Beard v. Flying J, Inc., 266 F.3d 792, 802 (8th Cir. 2001). All of the requests at issue were based on Senske's contention that it was not ready for trail. We cannot conclude that the district court abused its discretion in denying these requests when, as the court noted, the case had been pending for over two years, the trial date had been set for over a year, and the court had no openings on its calendar to facilitate a continuance.

E

Senske also asks for a new trial based on what it alleges were prejudicial comments and questions from the district court during the trial. We will only vacate a jury verdict for alleged trial misconduct if the record discloses that the judge was "actually biased or the judge's remarks projected the appearance of advocacy or partiality." Mitchell v. Kirk, 20 F.3d 936, 937 (8th Cir. 1994). Senske argues that the district court showed bias by urging the parties to settle, by making certain comments during trial, and by ruling against Senske on certain evidentiary issues.

As an initial matter, almost all of the comments Senske references were either made during pretrial conferences or outside of the presence of the jury at trial. Because the jury did not hear the comments, Senske could not have suffered any prejudice as a result. Harris v. Steelweld Equipment Co., 869 F.2d 396, 401

(8th Cir. 1989).  We also find that the judge's warning to both parties to not "play little games with the jury" did not prejudice Senske.  See Williams v. Fermenta Animal Health Co., 984 F.2d 261, 264 (8th Cir. 1993) (holding that "[t]he judge's comment referred to the attorneys for both parties and therefore did not indicate partiality or bias").

We also see no grounds for a new trial in the judge's instruction to Senske's counsel that he "[g]et on to something that's important" when counsel was interrogating a witness about the necessity of replacing five-dollar gasket in connection with the installation of the remanufactured engine and transmission in Truck 834.  Likewise, we see no problem with judge's warning that he would not let counsel embarrass FCC's non-expert witness by asking him questions concerning topics about which had no knowledge.  The court was simply exercising proper control over the mode and order of witnesses interrogation.  See Harris, 869 F.2d at 401–402.  In short, Senske's allegations are not the stuff of bias or misconduct.  We find no reversible error in the way the district court conducted the trial.

F

Senske next objects to the $100,898.90 in attorney's fees that the court awarded to FCC.  "The amount of an award of attorneys' fees rests within the sound discretion of the court and we will not disturb it absent clear abuse of that discretion."  Walton Gen. Contractors, Inc./Malco Steel, Inc. v. Chicago Forming, Inc., 111 F.3d 1376, 1385 (8th Cir. 1997).

The district court used the "lodestar" method to calculate FCC' s attorney's fees.  Under this method, the district court multiplies a reasonable number of hours for the work performed by a reasonable hourly rate.  See H.I. Inc. v. Flygt Corp., 925 F.2d 257, 259-60 (8th Cir. 1991).  Next, the court may adjust the amount based upon the particular circumstances of the case.  Blum v. Stenson, 465 U.S. 886, 888 (1984).

Senske objects to the award because it insists that the court should not have used high billing rates from Fargo for its calculations. Senske contends that it should not be held responsible for premium Fargo rates because the case was filed in Grand Forks and it was the judge who, for the court's convenience, changed the venue to Fargo. Senske also alleges that the court allotted too many hours, and objects to the court's ten percent upward-departure rate.

We affirm the award. The "relevant community" for determining hourly rates is the place where the case was tried. Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982). Senske did not object to the transfer to Fargo either below or on appeal; it therefore cannot now complain about the implications of the transfer. We also find no abuse of discretion in the upward adjustment. Here, the court reasonably determined that the adjustment was appropriate based on the skill displayed by FCC's counsel, the exceptional result obtained in the case, and the risk taken by FCC and its counsel in expending well over $100,000 in legal fees and costs, when FCC's actual damages were only $42,370.47. Further, it appears that Senske's conduct and unsuccessful litigation strategies—i.e., Senske's failed efforts to withhold certain discovery information, its ultimately-dismissed claims against a third party, its unsuccessful summary judgment motion, its flurry of unsuccessful pretrial motions, and its refusal to stipulate to certain key facts—were the principal forces driving the high litigation costs.

G

Finally, Senske questions the amount of prejudgment interest that the district court awarded to FCC. The district court's judgment states that it added prejudgment interest at the rate of six percent per annum on actual damages awarded by the jury, from the date of purchase of the two trucks to the date of judgment, in the total amount of $6,145.54. Senske does not doubt that some prejudgment interest is due to FCC. See Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 752 (8th Cir. 1986) ("prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of

interest inequitable"); see also 47 C.J.S. Interest & Usury § 106 (2009) ("prejudgment interest is in the nature of compensation for the use by the defendant of money to which the plaintiff is entitled, payable to the plaintiff . . . from the date of the accrual of the cause of action"). However, Senske questions its obligation to pay prejudgment interest on the expenses associated with Truck 834's repairs for the time before the truck had actually been repaired.

We reject Senske's challenge because of its failure to clearly object to the district court's calculation of prejudgment interest, and its failure to specify, either at the district court or on appeal, what amount of prejudgment interest was improper.

The issue of prejudgment interest arose after the jury's verdict and shortly before the jury was excused. When counsel for FCC asked about the calculation of interest, the court instructed that "[i]nterest will be calculated by the court and added into the judgment. The interest will be on the $42,370.47, however not on the treble part." When the court expressly asked counsel for Senske if he "ha[d] any question about the procedure that will be followed here," counsel answered, "No, Your Honor."

Although Senske later raised a general objection to the prejudgment interest in its motion for a new trial before district court, Senske offered the court no specifics regarding what amount of prejudgment interest was improper. Instead, Senske asked to eliminate all prejudgment interest, stating that "it is impossible to determine prejudgment interest in this case. Therefore, Defendants' [sic] request that any interest awarded be rescinded."

On appeal, neither in its brief nor at oral argument could Senske point to any specific amount of prejudgment interest that was incorrectly calculated. Senske also failed to offer an explanation for its initial failure to oppose the district court's proposed procedure for calculating the prejudgment interest. Under these

circumstances, we cannot say the district court abused its discretion in calculating prejudgment interest. See Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 868 (8th Cir. 2004) (noting that award of prejudgment interest is reviewed for abuse of discretion).

## CONCLUSION

In sum, given the highly deferential standards of review on each of the issues before us, Senske cannot prevail in its challenge to the jury's verdict in this odometer fraud case. Indeed, the case is exceptional only because it presents the court with its first opportunity since Duval to state the correct test for actual damages under 49 U.S.C. § 32710(a) when additional damages beyond the FMV price difference are involved. Whereas in Duval, the only damages proven were in the difference between the price paid and the FMV for actual milage, the plaintiff in this case, FCC, presented evidence showing that the odometer error proximately caused the additional damages. Some 30 years ago, the district court in Duval correctly predicted the test for actual damages under section 32710(a): (1) the purchase price of the vehicle less its FMV and (2) any expenses shown to be attributable to the defendant's wrongful act.

For the reasons stated above, we affirm the judgment of the district court.

_____